[No. F010584. Fifth Dist. May 9, 1990.]

TREND HOMES, INC., et al., Plaintiffs and Appellants, v.
CENTRAL UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

104

**COUNSEL**

McCormick, Barstow, Sheppard, Wayte & Carruth, D. Greg Durbin and Phyllis Barker for Plaintiffs and Appellants.

Lozano, Smith, Smith & Woliver, Louis T. Lozano and Barbara Booth Grunwald for Defendants and Respondents.

## OPINION

## FRANSON, P. J.—

### STATEMENT OF THE CASE

Trend Homes, Inc. (Trend), and Land Dynamics appeal the judgment dismissing their first amended complaint against Central Unified School District (CUSD) and James R. Henderson, the director of business and financial services for CUSD. By their complaint, appellants sought declaratory relief and restitution of school facilities fees paid to CUSD as a condition of the approval of appellants' residential developments. Appellants alleged that these fees were invalid under California Constitution, articles XIII A and XIII B. Specifically, the first cause of action sought a declaration that the fees were invalid under article XIII A, the second cause of action sought a declaration that the fees were invalid under article XIII B, the third cause of action sought to enjoin respondents from imposing future fees, and the fourth cause of action sought restitution of all the fees that had been paid.

Respondents' demurrer to the first amended complaint was sustained without leave to amend on the grounds that appellants' causes of action were barred by: (1) the 120-day statute of limitations for an action to "attack, review, set aside, void or annul an ordinance, resolution or motion levying a new fee or service charge" (Gov. Code, § 54995);[1] and (2) the failure of appellants to request the documents pertaining to the development fee from CUSD 30 days before initiating the suit (§ 50076.5, now renumbered § 66017). Further, Land Dynamics's cause of action for restitution was held to be barred by the 180-day statute of limitations for protesting the imposition of fees on a residential housing development. (§ 65913.5, now renumbered § 66008.)

### STATEMENT OF FACTS

■ This appeal follows the sustaining of a demurrer to the complaint without leave to amend; hence, the facts as alleged in the complaint must be regarded as true. (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].)

Trend and Land Dynamics are in the business of acquiring open ground, subdividing it and constructing single family residences. Trend and Land Dynamics have developed and are continuing to develop property within CUSD's boundaries.

---

[1] All statutory references are to the Government Code unless otherwise indicated.

In 1977, the Legislature enacted Senate Bill No. 201 (SB 201), codified at section 65970 et seq., to authorize a method for financing interim classroom facilities to alleviate school overcrowding caused by residential development. In 1979, the City of Fresno (City) enacted an ordinance to implement SB 201. Under this ordinance, a school district experiencing "conditions of overcrowding" can cause the City to require a residential builder to pay the school district fees for interim school facilities necessary to relieve the "conditions of overcrowding" produced by the development. (Fresno Mun. Code, § 12-801 et seq.)

On October 12, 1982, the governing body of CUSD passed a resolution finding that "conditions of overcrowding exist in one or more attendance areas." The resolution stated that "there are a number of proposals to subdivide and develop land within the district for single-family and multi-family use" and that "such subdivision and development will cause an increase in the pupil enrollment so that the enrollment will exceed the capacity of the schools." The Fresno City Council passed a resolution on November 23, 1982, concurring in CUSD's findings that conditions of overcrowding will exist within the attendance area of CUSD upon development of numerous residential projects proposed and pending within CUSD.

CUSD and the City entered into an agreement dated February 15, 1983, referred to as the "Secured Agreement" (Secured Agreement). Under the Secured Agreement, the City agreed to condition the issuance of building permits upon the builder: (1) entering into the Secured Agreement as a party by signing a memorandum of secured agreement; or (2) paying any fees approved and adopted by CUSD and the City under the SB 201 ordinance. A builder who elects to become a party to the Secured Agreement agrees to pay the "basic fee" established in the agreement. However, beginning before 1986 and continuing to the present time, CUSD has required appellants and other residential builders to pay school facilities fees even where a memorandum of secured agreement has not been signed.

Trend paid school facilities fees to CUSD in the amount of $36,250.70 from April 1, 1983, to June 30, 1983; $217,500 from July 1, 1983, to June 30, 1984; $133,550 from July 1, 1984, to June 30, 1985; $206,983.25 from July 1, 1985, to June 30, 1986; $84,476.50 from July 1, 1986, to November 4, 1986; and more than $159,000 within 180 days of the time this suit was filed. Land Dynamics paid school facilities fees to CUSD in the amount of $33,750 from July 1, 1984, to June 30, 1985, and $73,999.75 from July 1, 1985, to June 30, 1986.

On October 23, 1986, Trend made written demand upon CUSD to cease and desist from collecting school facilities fees and refund the fees already

collected on the grounds, inter alia, that such fees violated California Constitution, articles XIII A and XIII B and were collected on the false basis that conditions of overcrowding existed. CUSD refused this demand on November 7, 1986.

On December 18, 1986, Trend presented a claim to CUSD for restitution of the school facilities fees under section 905. CUSD rejected this claim. Appellants commenced this action May 5, 1987.

DISCUSSION

I. *Whether the statute of limitations pertaining to actions attacking fees or service charges enacted by local agencies bar appellants' causes of action.*

The trial court held that Trend's causes of action were barred by the 120-day statute of limitations contained in section 54995. The court found that Land Dynamics's causes of action were barred by the 180-day statute of limitations in former section 65913.5. Trend contends section 54995 does not apply to this lawsuit. Further, Trend and Land Dynamics assert CUSD is estopped from asserting a statute of limitations defense.

A. *Section 54995.*

Section 54995 provides: "Any judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion levying a new fee or service charge, or modifying or amending an existing fee or service charge, duly enacted by a local agency, . . . shall be commenced within 120 days of the effective date of the ordinance, resolution, or motion."

 Enacted in 1982 as part of chapter 13.5 of division 2 of title 5, entitled "Limitation of Actions to Review Local Agency Fees and Charges," section 54995 "represents a legislative recognition that the planning requirements of financially constrained local agencies in post-Proposition 13 California necessitate a relatively short statute of limitations so that local agencies will be promptly informed of any challenges to their ability to collect fees and spend the revenues thereby generated." (*San Marcos Water Dist.* v. *San Marcos Unified School Dist.* (1987) 190 Cal.App.3d 1083, 1085 [235 Cal.Rptr. 827].)

Trend contends section 54995 does not apply because Trend is not attacking an "ordinance, resolution, or motion." Rather, the disputed fees were levied under the Secured Agreement. As noted above, the city council passed a resolution on November 23, 1982, finding that conditions of over-

crowding will exist within the CUSD attendance area upon the development of proposed residential projects. Thereafter, the City and CUSD entered into the Secured Agreement for the purpose of assuring adequate school facilities and services to the residents of these future developments. Trend had the choice of either complying with the terms of the Secured Agreement or paying any fees approved and adopted by CUSD and the City to CUSD under the interim school facilities fee ordinance.

The Secured Agreement provides that the fees paid under it "shall be in lieu of, and serve in satisfaction of, any fees otherwise assessable by the CITY under its authority pursuant to California Government Code Sections 65970, *et seq.,* and Fresno Municipal Code Sections 12-800, *et seq.,* or the CITY'S police powers." The trial court concluded that the imposition of the fees by the Secured Agreement "was clearly the result of and was provided for by the City of Fresno's 'Interim School Facilities Fee Ordinance' and the defendant School District's 'Resolution and Finding of Conditions of Overcrowding.' The agreement, which the [appellants] have chosen to follow, is simply a substitute for a direct imposition of fees by ordinance or resolution." Trend argues that by applying section 54995 to substitute payments, the trial court impermissibly broadened that section resulting in the forfeiture of Trend's right to vindicate important constitutional safeguards.

■ Contrary to Trend's position, the trial court's analysis is sound. The Secured Agreement would not have been entered into but for the resolutions of overcrowding adopted by both CUSD and the City. Thus, although the resolutions did not levy the fees directly, the resolutions were the source of the agreement which did. It is the validity of these resolutions that the complaint attacks. As noted by the trial court, it would be honoring form over substance to hold that section 54995 does not apply in this situation. The method of levying the fee, whether by resolution or by agreement pursuant to an earlier resolution, cannot logically affect the policy of providing prompt notice to financially constrained local agencies of challenges to their ability to collect fees and spend the revenues thereby generated. Therefore, section 54995 applies to appellants' causes of action.

B. *Section 65913.5.*

Former section 65913.5, now section 66008, sets forth a procedure for protesting the imposition of any fees, dedications, reservations, or other exactions on a residential housing development by a local agency. Under this section, the party must tender any required payment in full under protest. Further, an "action to attack, review, set aside, void, or annul" the imposition of the fees must be filed within 180 days after the date of the imposition. "Thereafter, notwithstanding any other law to the contrary, all

persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such imposition." (§ 65913.5, subd. (d).)

Before the enactment of this statute in 1985, a developer could not challenge the validity of fees imposed on a residential development without halting work on the development. If the developer accepted a building permit and complied with its conditions, he was considered to have waived the right to assert the invalidity of the conditions and to sue the public entity for the costs of complying with them. (*Pfeiffer* v. *City of La Mesa* (1977) 69 Cal.App.3d 74, 78 [137 Cal.Rptr. 804].) Section 65913.5 alleviates this problem and further prohibits the local agency from withholding approval of any map, plan, permit, zone change, license or other form of permission incident to or necessary for the development because of the protest. (§ 65913.5, subd. (b).)

For purposes of this section, fees are imposed "when they are imposed or levied on a specific development." (§ 65913.5, subd. (g).) Thus, one party developing different subdivisions in the same area over a period of time is not precluded from challenging the fees imposed on each particular subdivision. The limitations period begins to run on the date the fee is first imposed or levied on the subdivision at issue.

The trial court found, for pleading purposes, that Trend's letter dated October 23, 1986, demanding CUSD cease and desist from collecting additional fees, substantially complied with section 65913.5's protest requirement. The parties do not contest this finding. Thus, if any fees paid by Trend after October 23, 1986, were imposed or levied within 180 days of May 5, 1987, the date this action was instituted, Trend's action for refund of those fees is timely under section 65913.5.

Land Dynamics paid fees no later than June 30, 1986, more than 180 days before May 5, 1987; hence, its cause of action for refund is barred by section 65913.5.

C. *Estoppel.*

Appellants contend CUSD is estopped from asserting the statute of limitations defense under either section 54995 or 65913.5. Appellants allege CUSD falsely represented that conditions of overcrowding existed and that appellants' developments were causing those conditions of overcrowding. Appellants contend they paid the fees in reliance on CUSD's representations and under the mistaken belief that conditions of overcrowding existed. Based on the SB 201 ordinance definition of "conditions of overcrowding," appellants argue the trial court erred in finding that CUSD's representations regarding overcrowding were true.

Fresno Municipal Code section 12-802, subdivision (c), provides " 'Conditions of Overcrowding' " exist when "the total enrollment of a school, including enrollment from a proposed residential development, exceeds the rated capacity of such school as determined by the governing body of the district." As noted above, this ordinance was enacted to implement the School Facilities Act (§ 65970 et seq.).

■ However, appellants paid the fees under the Secured Agreement. A copy of the Secured Agreement was incorporated into appellants' first amended complaint. That agreement states the City adopted the finding of CUSD that "conditions of overcrowding *will exist* within the attendance area of [CUSD] upon development of numerous residential projects proposed and pending within [CUSD]." (Italics added.) Thus, CUSD did not represent to appellants that conditions of overcrowding already existed when the fees were imposed. Appellants' allegation that such a misrepresentation was made may be stricken because it is inconsistent with a written instrument which was incorporated by reference into the complaint. (*Fundin* v. *Chicago Pneumatic Tool Co.*, *supra*, 152 Cal.App.3d 951, 955.) Consequently, appellants cannot rely on this alleged misrepresentation to support their estoppel claim.

■ The Secured Agreement takes all proposed future developments into account and does not limit the use of the fees to providing for temporary facilities. Although the language of SB 201 does not appear to authorize this result, neither SB 201 nor the City's SB 201 ordinance prohibits it. Cities and counties have broad police power subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law. (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) Local action pursuant to this police power aimed at providing for additional permanent school facilities is not preempted by SB 201. SB 201 both permits and recognizes local measures to finance school facilities. The purpose of the School Facilities Act "is to encourage local school districts to identify, and local governments to deal with, the effects of residential development on school facilities and to provide local government with 'new and improved methods' to cope with the effects of such development 'within a reasonable period of time' and on a short-term basis." (*Id.* at p. 889.) Local governments are not prohibited from developing and implementing long-term solutions. (*Ibid.*) Thus, neither SB 201 nor the SB 201 ordinance invalidates the Secured Agreement.[2]

---

[2] The School Facilities Act was revised in 1986, effective January 1, 1987. (Stats. 1986, ch. 887, § 7, p. 3080.) The act now grants authority to school district governing boards to impose developer fees, subject to specified limits, and prohibits the imposition of other developer

In sum, the Secured Agreement under which the fees were imposed was based on a finding that "conditions of overcrowding *will* exist." Thus, the City and CUSD did not falsely represent to appellants that conditions of overcrowding existed when the fees were imposed. Appellants' estoppel claim was based on this alleged misrepresentation. Further, the Secured Agreement was valid. Basing school facilities fees on future needs in an attempt to implement a long-term solution is not prohibited by SB 201. Therefore, appellants have not pleaded facts sufficient to show CUSD is estopped from asserting a statute of limitations defense.

II. *Appellants' failure to request documents from CUSD establishing that the development fee did not exceed the costs of the service for which the fee was imposed 30 days before initiating the lawsuit requires dismissal.*

Former section 50076.5, now section 66017, provides that no party may initiate any action or proceeding to "validate, attack, review, set aside, void, or annul any ordinance or resolution providing for the imposition of a development fee by any city, county, or district in which there is at issue whether the development fee is a special tax within the meaning of Section 50076" unless "[a]t least 30 days prior to initiating the action or proceeding, the party requests the city, county, or district to provide a copy of the documents which establish that the development fee does not exceed the cost of the service, facility, or regulatory activity for which it is imposed." Section 50076.5 became effective January 1, 1987. (Stats. 1986, ch. 189, § 1, p. 1056.)

The trial court found section 50076.5 imposed a condition precedent to filing suit similar to the requirements under the Government Claims Act. (§ 810 et seq.) Although section 50076.5 pertains to claims based on alleged violations of California Constitution, article XIII A (see § 50075), the court further found that it also applied to alleged violations of article XIII B. Thus, the trial court held "[t]he demurrer to all causes of action in the first amended complaint on grounds of noncompliance with Government Code § 50076.5(b)(2) should be sustained."

Appellants contend section 50076.5 does not apply to their claims based on article XIII B. As to their article XIII A claim, appellants contend their noncompliance with section 50076.5 should be excused on the ground that requesting such documents would have been futile. As discussed above,

fees. (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1232 [256 Cal.Rptr. 671].) Thus, whereas SB 201 provided a "stop-gap," "patchwork" measure to finance interim school facilities needs, the 1986 revisions provide a comprehensive, long-term solution to financing the needs of local school districts. (*Ibid.*)

Trend's claim for fees paid before October 23, 1986, is barred by section 54995. Further, Land Dynamics's entire claim is barred by section 65913.5. Thus, the only fees remaining at issue are those that were imposed on, and paid by, Trend within 180 days of the filing of the complaint.

Appellants have not contested the trial court's finding that section 50076.5 imposed a condition precedent to filing a lawsuit rather than providing an administrative remedy. Nevertheless, appellants contend that the "futility" exception to the requirement that available administrative remedies be exhausted should apply. ■ This exception excuses the exhaustion requirement where its pursuit would be futile, idle or useless. (*Jacobs* v. *State Bd. of Optometry* (1978) 81 Cal.App.3d 1022, 1030 [147 Cal.Rptr. 225].) "Thus, where an agency has made it clear what its ruling would be, idle pursuit of administrative remedies is not required." (*Ibid.*) Appellants argue that it would have been futile to request documents from CUSD in an effort to cause CUSD to discontinue requiring development fees and restore past fees. Appellants contend "[i]t is clear that defendant CUSD will not refrain from requiring payment of fees, nor restore fees already paid, until this court so directs them."

■ However, this argument misconstrues the apparent intent of section 50076.5. The purpose of requiring a party to request documents from the governmental entity before initiating a judicial proceeding is not to cause that entity to discontinue collecting the disputed fees. Rather, the result of this requirement is to provide the party with a factual basis for its claim before filing suit. It is the governmental entity which has knowledge of and access to the evidence regarding its compliance with article XIII A. (Cf. *Oildale Mutual Wat. Co.* v. *North of the River Mun. Wat. Dist.* (1989) 215 Cal.App.3d 1628, 1634 [264 Cal.Rptr. 544].) This section merely requires an attempt to gain access to that information before litigation is commenced. Thus, this requirement cannot be excused on the ground that the request for documents would not lead to a result favorable to appellants.

Appellants further contend that because section 50076.5 applies to the issue of whether a development fee is a special tax under article XIII A, it does not apply to their article XIII B claims. The documents which must be requested under section 50076.5 are those "which establish that the development fee does not exceed the cost of the service, facility, or regulatory activity for which it is imposed."

■ A development fee is treated as a special tax under article XIII A when the fee exceeds the reasonable cost of providing the service or the regulatory activity for which it is charged. (*California Bldg. Industry Assn.* v. *Governing Bd.* (1988) 206 Cal.App.3d 212, 236 [253 Cal.Rptr. 497].)

Similarly, under article XIII B, proceeds of taxes include regulatory licenses, user charges and user fees to the extent that such proceeds exceed the costs reasonably borne by such entity in providing the service or regulatory activity. (*County of Placer* v. *Corin* (1980) 113 Cal.App.3d 443, 448 [170 Cal.Rptr. 232].) In other words, both special taxes and proceeds of taxes encompass excessive fees.

The complaint alleges that the fee constitutes both a special tax and proceeds of taxes because the fee exceeds "the reasonable cost of providing additional permanent school facilities made necessary by residential development as it occurs." Consequently, the documents that could provide a factual basis for a claim that the fees constitute "proceeds of taxes" under article XIII B are the same documents that would be requested under section 50076.5. Article XIII A claims are closely related to article XIII B claims. If a fee is not a special tax within the meaning of article XIII A, it is not the type of revenue intended to be controlled by article XIII B. (*Russ Bldg. Partnership* v. *City and County of San Francisco* (1987) 199 Cal.App.3d 1496, 1507 [246 Cal.Rptr. 21].)

In light of the above, it would not make sense to prohibit an article XIII A cause of action under section 50076.5 but permit an article XIII B cause of action to go forward. Appellants' claim that the fees were excessive is merely given two different labels. Therefore, the trial court's conclusion that section 50076.5 applies to all causes of action in appellants' complaint is upheld.

The judgment is affirmed; respondents to recover their costs.

Martin, J., and Ardaiz, J., concurred.