[No. S139237. Dec. 3, 2007.]

CITY OF STOCKTON et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
CIVIC PARTNERS STOCKTON, LLC, Real Party in Interest.

**COUNSEL**

Wulfsberg Reese Colvig & Firstman, Charles W. Reese, Timothy A. Colvig, Mark A. Stump, Jeffrey R. Ward; Goldfarb & Lipman, Lee C. Rosenthal; Richard E. Nosky, Jr., City Attorney, and Michael T. Rishwain, Assistant City Attorney, for Petitioners.

Orbach, Huff & Suarez, David M. Huff and Ryan W. Baldino for Los Angeles Unified School District as Amicus Curiae on behalf of Petitioners.

Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Law Offices of Malcolm A. Misuraca and Malcolm A. Misuraca for Real Party in Interest.

Downey Brand, Melissa A. Thorme and Gregory T. Broderick for Fallbrook Public Utility District as Amicus Curiae on behalf of Real Party in Interest.

OPINION

**CORRIGAN, J.**—Government Code section 905 requires that "all claims for money or damages against local public entities" be presented to the responsible public entity before a lawsuit is filed.[1] Failure to present a timely claim bars suit against the entity. (§ 945.4.) Here we hold that these requirements apply to breach of contract claims. We also adopt the practice of referring to the claims statutes as the "Government Claims Act," to avoid the confusion engendered by the informal short title "Tort Claims Act."

In this suit against a city and its redevelopment agency, the trial court overruled defendants' demurrer, deciding that the claim requirements did not apply to plaintiff's contract causes of action. The Court of Appeal issued a writ of mandate directing that the trial court sustain the demurrer. We affirm the Court of Appeal's judgment, with modifications.

## I. BACKGROUND[2]

Plaintiff Civic Partners Stockton, LLC (Civic), executed two redevelopment contracts in May 2000 with defendant Redevelopment Agency of the City of Stockton (the Agency). One contract involved rehabilitation of the Hotel Stockton; the other was for construction of an adjacent cinema. In May 2001, defendant City of Stockton (the City) leased the upper floors of the hotel from Civic for office space.

Three months later, however, the City repudiated the lease. Mark Lewis, the City Manager and Executive Director of the Agency, demanded that Civic find another use for the upper floors of the hotel. Civic had been depending on the lease to support its financing for the hotel project. The financing for the cinema depended on a viable hotel operation. Lewis proposed senior housing as an alternative for the upper floors. That change required redesigning the hotel's interior and altering the financial arrangements to include federal and state income tax credits. By the end of 2001 Civic had completed new plans for the hotel, as well as tax and financial analyses and other work needed to apply for the tax credits. This work cost Civic several hundred thousand dollars.

---

[1] The statute provides some exceptions to the claim presentation requirement, none of which are relevant here. Further unspecified statutory references are to the Government Code.

[2] We take the underlying facts from the complaint and documents subject to judicial notice. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569]; *Big Valley Band of Pomo Indians v. Superior Court* (2005) 133 Cal.App.4th 1185, 1189–1190 [35 Cal.Rptr.3d 357].)

In January 2002, Lewis informed Civic that the Agency wanted Cyrus Youssefi and his company, CFY Development, to take over the upper floors, the senior housing plan, and the tax credit application. Civic began discussions with Agency personnel about how to protect Civic from the losses resulting from the breaches of the hotel and lease agreements. The Agency agreed to preserve Civic's rights in the rest of the hotel and reimburse it for its investment and overhead expenses.

Civic agreed to give the Agency a set of its plans for the hotel. In a letter agreement dated February 19, 2002, Steve Pinkerton, the Agency's Director of Housing and Redevelopment, accepted Civic's conditions that the plans would remain Civic's property, and could only be used by the Agency or others "subject to an agreement between the Agency and Civic . . . regarding the future renovation of the Hotel (including reimbursement of costs to date), as well as a cooperative agreement" regarding other components of the project including the cinema. At some point in February, Pinkerton also agreed to pay the balance due on Civic's contract with its architect.

The next month, Pinkerton agreed to assume a loan taken by Civic (the Paramount loan), to recognize amounts due to Civic, and to take certain steps to mitigate Civic's losses. Civic sent Pinkerton a memorandum dated March 15, 2002, outlining the terms of the agreement. Pinkerton never questioned or disavowed those terms. For a time, the Agency abided by the terms of the February and March agreements, taking steps to assume the Paramount loan, discussing reimbursements with Civic, and forwarding an agreement on property intended for the cinema project.

On March 19, 2002, without informing Civic, the Agency entered into a new hotel development agreement with a company named Hotel Stockton Investors, operated by Youssefi. This agreement conflicted with Civic's hotel agreement, which was still in effect. The Agency gave Civic's plans to Youssefi and took steps to repudiate its agreements with Civic and to oust it from the redevelopment projects. It did not reimburse Civic for its investment in the plans as required by Civic's hotel agreement. It made its own arrangements with the architect, obtaining all the plans and associated project documents. It accused Civic of breaching the hotel contract, and gave notice to terminate the agreement. Although it had approved a cinema lease between Civic and Kirkorian Premiere Theatres, the Agency approached Kirkorian in an attempt to take over Civic's position. Ultimately, the Agency executed a lease with another theater operator.

Civic did not present a claim before filing suit. Its original complaint, dated January 12, 2003, sought declaratory relief to establish its rights in the hotel plans, damages from Youssefi and his companies for interference with its contracts, and damages from the City and the Agency for breaching the hotel agreement and the mitigation agreement of February 19, 2002. The City and the Agency demurred, but did not rely on the government claim requirements. The trial court sustained the demurrer on the grounds that Civic's rights in the hotel plans were governed by federal copyright law and within the exclusive jurisdiction of the federal courts, that the City was not liable on the contract claims because it was not a party to either the redevelopment contracts or the February 19 and March 15 agreements, and that the February 19 and March 15 agreements could not support a cause of action against the Agency because the statutory requirements for public contracting were not met.

Civic's amended complaint, dated March 12, 2003, sought damages from the City for breach of the lease for the upper floors of the hotel, from the Agency for breach of the hotel and cinema agreements, from the City for interfering with the hotel and cinema agreements, and from Youssefi and his companies for interference with Civic's contracts. Civic again sought declaratory relief regarding its ownership rights in the plans. The City and the Agency demurred again, still without raising the claim requirements.

The court sustained the demurrer. It found that Civic had stated sufficient facts to support contract claims against the City for breach of the lease, and against the Agency for breach of the hotel and cinema agreements. However, Civic had failed to specify whether the contracts were oral, written, or implied; the court granted leave to amend as to these claims. The demurrer was sustained without leave to amend as to the declaratory relief claim, on the ground that the only recoverable damages were under federal copyright law, over which the court lacked jurisdiction.

The second amended complaint, dated June 8, 2004, restated the contract and interference with contract causes of action, specifying that the contracts in question were written. The claim for declaratory relief regarding Civic's rights in the hotel plans was omitted. The City and the Agency demurred for the third time. They argued that Civic's contract claims were defective because they depended on the February 19 and March 15 agreements, which were never properly approved. They also asserted that the second amended

complaint was barred because Civic had failed to comply with the government claim requirements. They noted that in *State of California v. Superior Court (Bodde)* (2004) 32 Cal.4th 1234 [13 Cal.Rptr.3d 534, 90 P.3d 116], filed May 24, 2004, this court ruled that failure to plead compliance with the claim requirements is a ground for demurrer. (*Id.* at p. 1239.)

The trial court overruled this demurrer. It decided that the factual allegations supported the contract claims, and that the claims statutes did not affect contractual liability. The City and the Agency then cross-complained against Civic, seeking damages for breaches of the hotel and cinema contracts and the hotel lease, misrepresentation, and failure of consideration. They also petitioned the Court of Appeal for a writ of mandate directing the trial court to sustain their demurrer. They pointed out that the claims statutes unquestionably governed Civic's tort claim for interference with contract, and contended they also applied to Civic's contract claims under the weight of case authority.

The Court of Appeal agreed. It held that the claim presentation requirements apply to contract causes of action against government defendants, and rejected a series of arguments by Civic attempting to excuse its noncompliance. However, the court ruled that if the City and the Agency pursued their cross-complaint, Civic would be allowed to file a cross-complaint of its own asserting defensive claims. The trial court was directed to enter an order sustaining the demurrer; the Court of Appeal did not reach the question whether leave to amend was proper. We granted Civic's petition for review.

## II. DISCUSSION

We independently review the Court of Appeal's decision. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].) Civic concedes, as it did below, that its tort cause of action for interference with contract was subject to the claim requirements, unless compliance was somehow excused.

### A. *The Claims Statutes and Contract Causes of Action*

Section 905 requires the presentation of "all claims for money or damages against local public entities," subject to exceptions not relevant here.

Claims for personal injury and property damage must be presented within six months after accrual; all other claims must be presented within a year. (§ 911.2.) "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected . . . ." (§ 945.4.) ■ "Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." (*State of California v. Superior Court (Bodde)*, *supra*, 32 Cal.4th at p. 1239.)

■ The purpose of the claims statutes is not to prevent surprise, but "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455 [115 Cal.Rptr. 797, 525 P.2d 701].) The claims statutes also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." (*Baines Pickwick Ltd. v. City of Los Angeles* (1999) 72 Cal.App.4th 298, 303 [85 Cal.Rptr.2d 74] (*Baines Pickwick*); see *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 123 [113 Cal.Rptr. 102, 520 P.2d 726].)

■ Contract claims fall within the plain meaning of the requirement that "all claims for money or damages" be presented to a local public entity. (§ 905.) As the *Baines Pickwick* court noted, other statutory terms further demonstrate the Legislature's intent that the claim requirements apply to contract causes of action. (*Baines Pickwick*, *supra*, 72 Cal.App.4th at pp. 303–304.) Section 905.2 requires the presentation of all claims against the state "[f]or money or damages on express contract." (§ 905.2, subd. (b)(3).) Section 910, governing the contents of claims against both the state and local entities, requires specification of the "date, place and other circumstances of the occurrence *or transaction* which gave rise to the claim asserted" (§ 910, subd. (c), italics added), and a "general description of the *indebtedness, obligation*, injury, damage or loss incurred . . . ." (§ 910, subd. (d), italics added.) Section 910.2 provides that "[c]laims against local public entities for supplies, materials, equipment or services need not be signed by the claimant or on his behalf if presented on a billhead or invoice regularly used in the conduct of the business of the claimant." Section 930.2 permits local

government contracts to include provisions for the presentation of "any or all claims arising out of or related to the agreement." (See also § 930, providing the same authorization for state contracts.) In view of these provisions, it is no surprise that courts have routinely applied the claim requirements to contract causes of action against local government defendants.[3]

The legislative history of the "money or damages" term of sections 905 and 945.4 confirms that they were meant to include contract claims. The current statutory scheme was the second enacted to replace a multiplicity of former claim requirements. In 1959, the Legislature acted on the Law Revision Commission's recommendation to provide a unified procedure for claims against local entities by adding former division 3.5 to the Government Code, including former sections 703 and 710, the predecessors of sections 905 and 945.4. (Stats. 1959, ch. 1724, p. 4133 et seq.; Recommendation and Study relating to The Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) pp. A-7, A-8, A-11 et seq.)[4]

Former section 703 referred to "claims for money or damages" just as section 905 does now, and former section 710 included the reference to "no suit for money or damages" currently found in section 945.4. As explained in the study supporting the Law Revision Commission recommendation, references to claims "for damages" in the pre-1959 statutes were understood to include both tort and breach of contract claims, but not ordinary claims for money due on a contract. Statutes requiring claims "for money" were construed to cover "all forms of monetary demands including pension claims and all types of tort and contract claims." (Recommendation and Study relating to The Presentation of Claims Against Public Entities, *supra*, 2 Cal. Law Revision Com. Rep. at pp. A-82, A-83, fns. omitted.)

---

[3] See, e.g., *Canova v. Trustees of Imperial Irrigation District Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1493–1494 [59 Cal.Rptr.3d 587]; *Baines Pickwick, supra,* 72 Cal.App.4th at pp. 303–304; *Alliance Financial v. City and County of San Francisco* (1998) 64 Cal.App.4th 635, 641 [75 Cal.Rptr.2d 341]; *Schaefer Dixon Associates v. Santa Ana Watershed Project Authority* (1996) 48 Cal.App.4th 524, 530–531 [55 Cal.Rptr.2d 698]; *Ocean Services Corp. v. Ventura Port Dist.* (1993) 15 Cal.App.4th 1762, 1775 [19 Cal.Rptr.2d 750]; *Dilts v. Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27, 31 [234 Cal.Rptr. 612]; *Loehr v. . Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 [195 Cal.Rptr. 576]; *Baillargeon v. Department of Water & Power* (1977) 69 Cal.App.3d 670, 681–682 [138 Cal.Rptr. 338]; *Voth v. Wasco Public Util. Dist.* (1976) 56 Cal.App.3d 353, 356 [128 Cal.Rptr. 608]; *Stromberg, Inc. v. L. A. County Flood etc. Dist.* (1969) 270 Cal.App.2d 759, 760, 762 [76 Cal.Rptr. 183]; *Pacific Gas and Elec. Co. v. City of Union City* (2002) 220 F.Supp.2d 1070, 1078.

[4] The scheme in effect today was established in 1963, when the Legislature combined the requirements for claims against local entities with those for claims against the state in part 3 of division 3.6 of title 1 of the Government Code. (Stats. 1963, ch. 1715, pp. 3369, 3372 et seq.)

The study noted that the recommended scope of the new statutes governing claims for "money or damages" was consistent with that of the preexisting statutes, and stated that "[i]nsofar as the claim is one for breach of contract, the need for early investigation and negotiation is frequently as important as in the case of tort claims." (Recommendation and Study relating to The Presentation of Claims Against Public Entities, *supra*, 2 Cal. Law Revision Com. Rep. at p. A-117.) Routine claims for money due were "in a different category" and did not require a formal claims procedure. (*Ibid.*) The study suggested allowing contractual waiver of "compliance with the claims statutes as to causes of action founded upon express contract other than claims for damages for breach of contract." (*Ibid.*) Thus, it is clear that the references to "money or damages" now found in sections 905 and 945.4 were always intended to embrace contract as well as tort claims. (See *Alliance Financial v. City and County of San Francisco, supra*, 64 Cal.App.4th at pp. 641–642.)

■ Civic's argument that breach of contract claims are not subject to the claim requirements is based primarily on section 814, which provides: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." It is true that some Courts of Appeal have read section 814 to exclude contract causes of action from the scope of the claim requirements. (*Harris v. State Personnel Bd.* (1985) 170 Cal.App.3d 639, 643 [216 Cal.Rptr. 274], disapproved on another point in *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1123, fn. 8 [278 Cal.Rptr. 346, 805 P.2d 300]; *Gonzales v. State of California* (1977) 68 Cal.App.3d 621, 627 [137 Cal.Rptr. 681]; *National Automobile & Cas. Ins. Co. v. Pitchess* (1973) 35 Cal.App.3d 62, 64–65 [110 Cal.Rptr. 649].) Others, however, have rejected that view, reasoning that section 814 pertains only to immunity from liability, and has no effect on the claims requirements. (*Baines Pickwick, supra*, 72 Cal.App.4th at pp. 308–309; *Loehr v. Ventura County Community College Dist., supra*, 147 Cal.App.3d at p. 1079; see also *Crow v. State of California* (1990) 222 Cal.App.3d 192, 199 [271 Cal.Rptr. 349].) This reasoning finds ample support in the language, structure, and purpose of the statutes.

Section 814 is found in part 2 of division 3.6 of title 1 of the statutory scheme, which the Legislature captioned "Liability of Public Entities and Public Employees." (§ 814 et seq., added by Stats. 1963, ch. 1681, p. 3267.) The claim presentation requirements are in part 3 of division 3.6 of title 1, which was enacted separately. (§ 900 et seq., added by Stats. 1963, ch. 1715, p. 3372; 1 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 1999) Claims Against Public Entities, § 1.45, pp. 29–30 (Cal. Government Tort Liability Practice).) Thus, the claim requirements are not included in section 814's declaration that "[n]othing in this part affects liability based on

contract . . . ." Section 814 simply reaffirms the longstanding rule that governmental immunity does not encompass contractual liability. (See *Souza & McCue Constr. Co. v. Superior Court* (1962) 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338] [citing cases].)[5] That proposition has no necessary connection to the requirement that a claim be presented before suit is filed. Prior notice of claims serves the purpose of facilitating investigation and possible settlement, whether or not the public entity would otherwise be immune from liability. (See *Loehr v. Ventura County Community College Dist.*, *supra*, 147 Cal.App.3d at p. 1079; *People ex rel. Dept. of Parks and Recreation v. West-A-Rama, Inc.* (1973) 35 Cal.App.3d 786, 794 [111 Cal.Rptr. 197].)

Civic contends we invoked section 814 to exclude contract claims from the reach of the claims statutes in *E. H. Morrill Co. v. State of California* (1967) 65 Cal.2d 787 [56 Cal.Rptr. 479, 423 P.2d 551], and *Longshore v. County of Ventura* (1979) 25 Cal.3d 14 [157 Cal.Rptr. 706, 598 P.2d 866]. However, in *E. H. Morrill* this court made no reference to the claim presentation procedures, confining itself to the question of governmental immunity. (*E. H. Morrill, supra*, 65 Cal.2d at pp. 793–794.) Nor did the *Longshore* court indicate that the scope of the claim requirements is affected by section 814. To the contrary, it held that the claim before it fell within a statutory exception to those requirements, and discussed the immunity exemption of section 814 as a separate matter. (*Longshore, supra*, 25 Cal.3d at p. 22.) Civic's reliance on section 814 fails.

Because of the broad scope of the claim requirements, a number of Courts of Appeal have followed the suggestion in *Baines Pickwick* that "Government Claims Act" is a more appropriate short title than the traditional "Tort Claims Act." (*Baines Pickwick, supra*, 72 Cal.App.4th at pp. 309–310; see, e.g., *Bates v. Franchise Tax Bd.* (2004) 124 Cal.App.4th 367, 373, fn. 2 [21 Cal.Rptr.3d 285]; *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 750, fn. 3 [120 Cal.Rptr.2d 550]; *Hart v. County of Alameda* (1999) 76 Cal.App.4th 766, 774, fn. 2 [90 Cal.Rptr.2d 386].)[6] We agree that this practice is a useful way to reduce confusion over the application of the claim

---

[5] A legislative committee comment on section 814 explains that the provision was intended to clarify the scope of governmental immunity with regard to monetary liability on contracts: "The various provisions of this part determine only whether a public entity or public employee is liable for money or damages. These provisions do not create any right to any other type of relief, nor do they have any effect on any other type of relief that may be available against a public entity or public employee. [¶] The doctrine of sovereign immunity has not protected public entities in California from liability arising out of contract. This section makes clear that this statute has no effect on the contractual liabilities of public entities or public employees." (Legis. Com. com., reprinted at 32 West's Ann. Gov. Code (1995 ed.) foll. § 814, p. 163; see Cal. Government Tort Liability Practice, *supra*, § 1.44, p. 28.)

[6] References to the "Government Claims Act" may be found in some earlier cases, but the usage was not broadly accepted until after the *Baines Pickwick* decision. (See *Trend Homes, Inc. v.*

requirements. Henceforth, we will refer to title 1, division 3.6, parts 1 through 7 of the Government Code (§ 810 et seq.) as the Government Claims Act.[7]

## B. *Restitution Claims*

Civic contends its contract causes of action are based on the law of restitution, and are therefore exempt from the claims statutes under *Minsky v. City of Los Angeles, supra,* 11 Cal.3d 113 (*Minsky*), and *Holt v. Kelly* (1978) 20 Cal.3d 560 [143 Cal.Rptr. 625, 574 P.2d 441]. In *Minsky,* the plaintiff sought the return of money seized by the police from an arrested person and allegedly diverted to the Policeman's and Fireman's Pension Fund after the criminal charges were resolved. (*Minsky,* at pp. 117–118.) This court held that a claim for the recovery of specific property is not one for "money or damages" under the Government Claims Act. (*Minsky,* at p. 121.) Even if the cash taken from the arrestee was no longer traceable, the "initial exemption of the action from the claims statute is not lost simply because the city takes the further wrongful step of disposing of the bailed property. The city cannot be permitted to invoke the claims statute, originally not available to it, by virtue of a later wrongful dissipation of the property. To so hold would be in effect to allow the local entity to profit by its own wrong, penalizing a plaintiff who, in light of the specific recovery remedy apparently available to him, justifiably did not file a claim." (*Id.* at p. 122, fn. 14.)

*Minsky* was followed in *Holt v. Kelly,* which similarly involved a claim for the return of personal property seized at the time of an arrest. (*Holt v. Kelly, supra,* 20 Cal.3d at pp. 564–565.) The rule that suits to recover specific property are not subject to the claim requirements has also been applied in actions to recover property seized under a search warrant, or compensation for its value. (*Long v. City of Los Angeles* (1998) 68 Cal.App.4th 782, 786–787 [80 Cal.Rptr.2d 583]; *Hibbard v. City of Anaheim* (1984) 162 Cal.App.3d 270, 277–278 [208 Cal.Rptr. 733].) None of these cases involved a government contract.

---

*Central Unified School Dist.* (1990) 220 Cal.App.3d 102, 113 [269 Cal.Rptr. 349]; *Gurrola v. County of Los Angeles* (1984) 153 Cal.App.3d 145, 148 [200 Cal.Rptr. 157].)

[7] The *Baines Pickwick* court identified only the claim presentation statutes in title 1, division 3.6, part 3 (§ 900 et seq.) as the "Government Claims Act." (*Baines Pickwick, supra,* 72 Cal.App.4th at pp. 309–310.) Other courts, however, have applied that title to the entire scheme referenced above, replacing the old "Tort Claims Act" label in its entirety. (E.g., *Javor v. Taggart* (2002) 98 Cal.App.4th 795, 800 [120 Cal.Rptr.2d 174]; *Trend Homes, Inc. v. Central Unified School Dist., supra,* 220 Cal.App.3d 102, 113; see Cal. Government Tort Liability Practice, *supra,* § 1.1, p. 3.) We adopt that practice. "Government Claims Act" is an appropriately inclusive term and an apt short version of the comprehensive title bestowed by the 1963 Legislature: "Claims and Actions Against Public Entities and Public Employees." (Stats. 1963, ch. 1681, § 1, pp. 3266, 3267.) Furthermore, it has been noted that the employee indemnification and defense provisions found in parts 2 and 7 of the act apply to contract as well as tort causes of action. (Cal. Government Tort Liability Practice, *supra,* § 4.2, p. 114.)

■ Civic argues that it transferred its plans and assets to the Agency in the expectation that it would be compensated for them, bringing it within the rule of *Minsky* and *Holt*. Civic characterizes that rule as an exemption of all restitution claims from the claim requirements. Such a blanket exclusion has never been recognized. The *Minsky* rationale is that a claim for specific property effectively held by the government as a "bailee" for the claimant is not one for "money or damages" under the Government Claims Act. (*Minsky, supra,* 11 Cal.3d at p. 121.) The *Minsky* court's reference to "general constructive trust principles" must be understood in that context. (*Ibid.*) Subsequent cases have limited the *Minsky* exception to situations in which the defendant had a duty to return seized property, enforceable by way of mandamus. (*Holt v. Kelly, supra,* 20 Cal.3d at p. 564–565; *Long v. City of Los Angeles, supra,* 68 Cal.App.4th at p. 787; *Hibbard v. City of Anaheim, supra,* 162 Cal.App.3d at p. 277; see *Hart v. County of Alameda, supra,* 76 Cal.App.4th at pp. 780–781.)[8] When a claim for "money or damages" is not based on a governmental obligation to return specific property, it is subject to the claim requirements.

■ Civic identifies no specific property held by defendants that it was entitled to recover. Rather, it contends it yielded assets in exchange for a promise of compensation. An attempt to enforce such a contractual agreement is a claim for "damages" under section 905.[9] The *Minsky* line of cases provides no excuse for Civic's failure to comply with the claim requirements.

## C. *Estoppel and Waiver*

Civic argues that defendants were estopped from relying on the Government Claims Act, or that they waived their defense under the act, either by failing to notify Civic that its claim was defective, by cross-complaining against Civic, or by failing to promptly raise the act as a defense in their first two demurrers. These arguments fail.

---

[8] Civic also relies on *Bertone v. City & County of S. F.* (1952) 111 Cal.App.2d 579 [245 P.2d 29], a case cited in *Minsky* to support the conclusion that the claims procedures do not apply to a claim for specific recovery of money. (*Minsky, supra,* 11 Cal.3d at pp. 122–123.) *Bertone* involved a deposit given by the plaintiff to cover a disputed water bill. It does not help Civic. Not only did it involve a specific sum of money held in a trust account, but it predated the Government Claims Act and applied a local ordinance governing only " 'claims for damages.' " (*Bertone, supra,* at pp. 587, 588.)

[9] As the Court of Appeal noted, the contract causes of action in Civic's second amended complaint alleged breach of three express contracts and did not seek the return of property. Civic argues that its claims to ownership of the copyright in the hotel plans, included in the first two complaints, were claims for restitution exempt from the claim requirements. However, these claims were omitted from the complaint before us. In any event, all claims for *damages* arising from defendants' alleged misappropriation of the plans would be subject to the Government Claims Act. Civic has not sought recovery of the plans themselves or their replacement value, but rather compensation for their unauthorized use.

■ "It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act. [Citations.] Estoppel most commonly results from misleading statements about the need for or advisability of a claim; actual fraud or the intent to mislead is not essential. [Citation.]" (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445 [256 Cal.Rptr. 766, 769 P.2d 948]; see also *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1044–1045 [75 Cal.Rptr.2d 777] [citing cases].) Civic specifies no act or statement by defendants that prevented it from filing a timely claim. It asserts that in early 2002 defendants assured it that its interests would be protected, in an effort to avoid a claim against them. But Civic alleges no conduct that might have deterred it from presenting a claim after defendants failed to keep their promises. (Cf. *Ocean Services Corp. v. Ventura Port Dist., supra,* 15 Cal.App.4th at p. 1776.) Thus, it does not establish even a colorable estoppel claim.[10]

Civic's principal waiver argument is equally defective. It contends the defense-waiver provisions of sections 910.8 and 911 apply because defendants did not advise it that the correspondence between the parties in February and March of 2002 was insufficient to constitute a claim. Section 910.8 provides that "[i]f, in the opinion of the board or the person designated by it, a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, . . . the board or the person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein." Under section 911, "[a]ny defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to the defect or omission as provided in Section 910.8 . . . ."

■ For a document to constitute a "claim as presented" under section 910.8, it must "disclose[] the existence of a 'claim' which, if not satisfactorily resolved, will result in a lawsuit against the entity." (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 709 [263 Cal.Rptr. 119, 780 P.2d 349].) Nothing in the correspondence relied on by Civic indicates that litigation might ensue if defendants did not comply with the terms under discussion. This is the most essential element of a "claim as presented," because it satisfies the primary purposes of the Government Claims Act: facilitating the investigation of disputes and their settlement without trial if appropriate.

---

[10] Civic filed an offer of proof in the Court of Appeal, in an attempt to show that it could amend its complaint to show waiver or estoppel. However, nothing in this document tends to show that defendants misled Civic regarding the claim requirements after the parties' negotiations failed.

(*Phillips*, at p. 709; see also, e.g., *Alliance Financial v. City and County of San Francisco*, *supra*, 64 Cal.App.4th at p. 647; *Wilson v. Tri-City Hospital Dist.* (1990) 221 Cal.App.3d 441, 445, 449 [270 Cal.Rptr. 436].) Civic has alleged that the parties attempted to restructure their plans in a mutually agreeable fashion, but it points to nothing that would have specifically alerted defendants to weigh the alternatives of litigation or compromise.[11]

Civic also argues that defendants waived the right to rely on the claim requirements by filing a cross-complaint. It contends the cross-complaint unjustly allows defendants to pursue contract claims against it while asserting the bar of the claims statutes on Civic's claims arising from the same transactions. The Court of Appeal considered this problem and offered a solution for Civic's predicament. The court noted that case law permits a purely defensive cross-complaint to be asserted against a public entity despite the defendant's noncompliance with the claims act, when (1) the public entity initiated the litigation between it and the cross-complainant; (2) the cross-complaint arises from the same transaction or event on which the entity's claim is based; and (3) the cross-complaint asserts only defensive matter, without seeking affirmative relief. (*Krainock v. Superior Court* (1990) 216 Cal.App.3d 1473, 1478 [265 Cal.Rptr. 715] (*Krainock*); see also Cal. Government Tort Liability Practice, *supra*, §§ 5.33, 5.34, pp. 197–198.) Although Civic initiated this litigation, the Court of Appeal held that in the interest of fairness, Civic should be allowed to file a cross-complaint of its own asserting any defensive claims it might have if defendants choose to pursue their cross-complaint.

While we agree with the Court of Appeal that it would be unjust to leave Civic defenseless against the cross-complaint, it is unnecessary to extend the *Krainock* exception to cover the circumstances before us. *Krainock* involved an unusual situation, in which a school district cross-complained for indemnity against a codefendant who then sought to file his own cross-complaint for indemnity from the district. (*Krainock*, *supra*, 216 Cal.App.3d at pp. 1476–1477.) This case is different; Civic initiated the litigation between the parties, and defendants filed their cross-complaint only after their demurrer was erroneously overruled. Under the usual rules of pleading, Civic may raise affirmative defenses in its answer to the cross-complaint (Code Civ. Proc., § 432.10), but may not seek affirmative relief (Code Civ. Proc.,

---

[11] Civic suggests in passing that it substantially complied with the claim requirements, but it fails to support that argument. Substantial compliance demands at least some compliance with all the statutory claim requirements. (*City of San Jose v. Superior Court*, *supra*, 12 Cal.3d at pp. 456–457.) A "claim as presented," on the other hand, may be established on a lesser showing; it is defined as a claim that "fails to comply substantially." (§ 910.8; see *Phillips v. Desert Hospital Dist.*, *supra*, 49 Cal.3d at p. 707.)

§ 431.30, subd. (c)).[12] At this early stage of the litigation, we express no view on whether the Government Claims Act might apply to particular affirmative defenses, such as setoff. (See *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.*, *supra*, 29 Cal.4th at pp. 198–199; *CDM Investors v. Travelers Casualty & Surety Co.* (2006) 139 Cal.App.4th 1251, 1269 [43 Cal.Rptr.3d 669].) Civic's answer is not before us, nor have the parties briefed the application of the claim requirements in this context.

Finally, Civic asserts in contradictory fashion that it was not defendants' cross-complaint that waived the claims act defense, but their delay in raising the defense in the demurrer proceedings. Civic contends that if defendants had promptly asserted the claim requirements, it could have filed a timely claim.[13] In essence, this argument equates the filing of a lawsuit with a "claim as presented" under section 910.8, obligating the public entity to notify the plaintiff of the necessity to present a proper claim if the entity is to preserve its defense under the claims statutes. (See *Phillips v. Desert Hospital Dist.*, *supra*, 49 Cal.3d at p. 705.) Such a procedure would be irreconcilable with the statutory scheme. The Legislature's intent to require the presentation of claims *before* suit is filed could not be clearer. (§ 945.4.) The purpose of providing public entities with sufficient information to investigate claims without the expense of litigation is not served if the entity must file a responsive pleading alerting its opponent to the claim requirements. Civic cannot shift responsibility for ascertaining the claim requirements to defendants.

### D. *Leave to Amend*

After directing the trial court to sustain the demurrer, the Court of Appeal declined to reach the question whether Civic should be granted leave to amend, reasoning that only the sufficiency of the second amended complaint was properly before it. On this point, the court missed the mark. The issue of leave to amend is always open on appeal, even if not raised by the plaintiff. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970–971 [9 Cal.Rptr.2d 92, 831 P.2d 317].) This case arrived at the Court of Appeal by the unusual

---

[12] "Affirmative relief" is an award, such as damages, that goes beyond merely defeating the plaintiff's recovery. (See *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198 [126 Cal.Rptr.2d 908, 57 P.3d 372].) An "affirmative defense," on the other hand, is one that depends on facts beyond those put at issue by the plaintiff. (See *Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532, 1546 [78 Cal.Rptr.2d 725].)

[13] Civic's first complaint was filed in January 2003. The period for asserting contract claims is one year. (§ 911.2.) Other than the City's alleged breach of the hotel lease, the conduct giving rise to Civic's claim occurred in 2002. Defendants did not raise the claims act defense until their third demurrer in 2004.

path of a writ petition challenging an order overruling a demurrer. (See *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 912–913 [55 Cal.Rptr.2d 724, 920 P.2d 669]; *Curry v. Superior Court* (1993) 20 Cal.App.4th 180, 183 [24 Cal.Rptr.2d 495].)[14] However, the ordinary standards of demurrer review still apply. (See *Okun v. Superior Court* (1981) 29 Cal.3d 442, 447, 460 [175 Cal.Rptr. 157, 629 P.2d 1369]; *Big Valley Band of Pomo Indians v. Superior Court, supra*, 133 Cal.App.4th at pp. 1189–1190; *Tyco Industries, Inc. v. Superior Court* (1985) 164 Cal.App.3d 148, 153 [211 Cal.Rptr. 540].)

■ Denial of leave to amend is not unusual following writ review of an overruled demurrer, because extraordinary relief is typically contemplated when there is a dispositive issue of subject matter jurisdiction (e.g., *San Diego Gas & Electric Co. v. Superior Court, supra*, 13 Cal.4th at pp. 903, 913); a cause of action is plainly and irremediably defective (e.g., *Babb v. Superior Court, supra*, 3 Cal.3d at p. 851); or a defense is necessarily complete (e.g., *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182–183 [123 Cal.Rptr.2d 637]). However, leave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations. (E.g., *People ex rel. Dept. of Transportation v. Superior Court* (1992) 5 Cal.App.4th 1480, 1486 [7 Cal.Rptr.2d 498].) If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment. (*State of California v. Superior Court* (1984) 150 Cal.App.3d 848, 863–864 [197 Cal.Rptr. 914]; cf. *Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 971; *Temescal Water Co. v. Department of Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1]; *Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852 [19 Cal.Rptr.2d 671].)

Here, Civic has not had an opportunity to amend its complaint to meet defendants' Government Claims Act defense. While it has yet to advance a successful argument against that defense, the second amended complaint does not on its face foreclose any reasonable possibility of amendment.

---

[14] As in *San Diego Gas & Electric Co. v. Superior Court*, the parties do not question the propriety of writ review, and it was clearly appropriate here. (*San Diego Gas & Electric Co. v. Superior Court, supra*, 13 Cal.4th at p. 913.) A significant legal issue is presented, and the benefits of the claims act defense would be effectively lost if defendants were forced to go to trial. (See *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *Big Valley Band of Pomo Indians v. Superior Court, supra*, 133 Cal.App.4th at pp. 1189–1190.)

## III. DISPOSITION

We modify the judgment of the Court of Appeal to include directions to order the trial court to grant Civic leave to amend the second amended complaint, should Civic seek to do so, and to omit the directions that Civic be allowed to file a cross-complaint. As so modified, the judgment is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.