Filed 8/8/13

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CIVIC PARTNERS STOCKTON, LLC, | C067304 |
| Plaintiff and Appellant, | (Super. Ct. No. 03AS00193) |
| v. | |
| CYRUS YOUSSEFI et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Kevin R. Culhane, Judge. Reversed with directions.

The Law Offices of Malcolm A. Misuraca and Malcolm A. Misuraca for Plaintiff and Appellant.

Wulfsberg Reese Colvig & Firstman Professional Corporation, Charles W. Reese and Michael J. Higgins; Law Offices of Patrick R. Sabelhaus, Patrick R. Sabelhaus and Joel A. Rice for Defendants and Respondents.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of I, II, IV, and V of the Discussion.

1

After first contracting with plaintiff Civic Partners Stockton, LLC for the renovation of a historic hotel in downtown Stockton, the Redevelopment Agency for the City of Stockton (the Agency) entered into a new redevelopment agreement with defendant Hotel Stockton Investors (HSI) for the same property. Plaintiff brought this action against the Agency, the City of Stockton (City), and HSI for breach of contract and related claims. Also named as defendants were Cyrus Youssefi (Youssefi) and his company, CFY Development (CFY), the general partner of HSI. (Hereafter, Youssefi, CFY and HSI shall be referred to collectively as the Youssefi defendants.)

The City and the Agency demurred, and the trial court overruled the demurrers. However, this court granted the City and the Agency's petition for writ of mandate and directed the trial court to sustain the demurrers on the basis of plaintiff's failure to comply with the Government Claims Act (Gov. Code, § 900 et seq.). Our decision was later affirmed by the California Supreme Court. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730 (*City of Stockton*).)

The present matter involves plaintiff's claims against the Youssefi defendants. The trial court granted the Youssefi defendants' motions for judgment on the pleadings on plaintiff's first cause of action for conversion of architectural plans, concluding such claim is preempted by federal copyright law. The court also granted summary adjudication on all remaining claims and entered judgment of dismissal. Plaintiff appeals, contending the trial court erred as to each claim and further erred in refusing to grant plaintiff leave to amend.

We conclude the trial court erred in granting judgment on the pleadings on the first cause of action and therefore reverse the judgment of dismissal. The first cause of action is not one for copyright infringement but for conversion of a particular object on which a copyrightable work is imbedded. It is therefore not preempted by federal copyright law. However, we reject plaintiff's remaining contentions on appeal and conclude the trial court properly granted summary adjudication on all remaining claims.

2

FACTS AND PROCEEDINGS

Because the trial court granted the Youssefi defendants' motion for judgment on the pleadings on the first cause of action, we accept as true the allegations of the complaint on that claim for purposes of this appeal. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118.) On all other claims, the trial court granted summary adjudication. We therefore review the evidence on those claims in the light most favorable to plaintiff. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.) For some of the facts not in dispute and a portion of the procedural background of this matter, we refer to the prior decision of the California Supreme Court in this matter.

On or about May 2, 2000, the Agency entered into an agreement with plaintiff (the Civic Agreement) for renovation of the Hotel Stockton (Hotel), a historic building at 133 East Weber Avenue in Stockton, California, containing five stories, an underground basement, and 178,000 square feet of space. Under the terms of the Civic Agreement, the Agency agreed to sell the Hotel to plaintiff for $1, provided plaintiff fulfilled all of its conditions and obligations under that agreement. Concurrently with the Civic Agreement, the City entered into an agreement to lease 65,000 square feet of office space in the Hotel.

In late 2000 and early 2001, plaintiff entered into negotiations with Paramount Financial Group, Inc. (Paramount) for a joint venture to develop business office space in the Hotel. However, the parties never finalized those negotiations into an agreement. Paramount nevertheless loaned plaintiff and two others $743,000 to fund early expenses associated with the renovation work.

The City later repudiated the lease for office space and demanded that plaintiff find another use for the upper floors of the Hotel. (*City of Stockton, supra,* 42 Cal.4th at p. 734.) The City proposed senior housing, which required redesign of the Hotel's interior and a change in the financing arrangement to include federal and state tax credits.

3

(*Ibid.*)  By the end of 2001, plaintiff had completed new plans for the Hotel and other work needed to apply for the tax credits, at a cost of several hundred thousand dollars. (*Ibid.*)

In January 2002, the City informed plaintiff it wanted the Youssefi defendants to take over the upper floors in the Hotel, the senior housing, and the tax credit application. (*City of Stockton*, *supra,* 42 Cal.4th at p. 735.)  The Agency began negotiating with plaintiff over how to protect plaintiff's interests upon such reassignment.  (*Ibid.*)  In February 2002, the Agency entered into an agreement with plaintiff whereby plaintiff would turn over to the Agency a reproducible copy of its plans for the Hotel renovation project subject to the following understanding:  "First, the plans are the property of [plaintiff].  Second, the plans can only be used by the [Agency], City or others subject to an agreement between the Agency and [plaintiff] regarding the future renovation of the Hotel (including reimbursement of costs to date), as well as a cooperative agreement between the Agency and [plaintiff] regarding other components of the Channel Head project (including the cinema and B&M Building)."

In March 2002, the Agency entered into a development agreement with HSI (the HSI Agreement) for renovation of the Hotel.  Under the HSI Agreement, development of the property was to include 140 senior residence units.  The HSI Agreement also provided that, upon completion of all development work and fulfillment of all other obligations under the agreement, the Hotel would be sold to HSI for $950,000.

On July 9, 2002, the Agency and HSI amended the HSI Agreement to provide for the creation of 156 affordable residential units rather than senior housing units.  Also in 2002, Paramount entered into an agreement with HSI for development of the Hotel.  The Hotel was eventually renovated by HSI into a single-room occupancy apartment house.

In January 2003, plaintiff filed suit against the City, the Agency and the Youssefi defendants for declaratory relief to establish its rights in the Hotel plans and for damages for breach of and interference with its contracts with the Agency and the City.  The City

4

and the Agency demurred and the trial court sustained the demurrer on the following grounds: (1) plaintiff's rights in the Hotel plans are governed by federal copyright law and within the exclusive jurisdiction of the federal courts, (2) the City was not a party to the Civic Agreement, and (3) the agreement with the Agency cannot support a claim because the statutory requirements for public contracting had not been met. (*City of Stockton*, *supra,* 42 Cal.4th at p. 736.)

Plaintiff thereafter amended the complaint and the City and the Agency again demurred. The trial court sustained the demurrers on the breach of contract claims based on uncertainty as to the form of the various contracts. On the declaratory relief claim, the court sustained the demurrer without leave to amend based on federal copyright preemption. (*City of Stockton*, *supra,* 42 Cal.4th at p. 736.)

Plaintiff filed a second amended complaint that excluded the declaratory relief claim. The City and the Agency again demurred, this time on the additional basis that plaintiff failed to satisfy the requirements of the Government Claims Act. (*City of Stockton*, *supra,* 42 Cal.4th at pp. 736-737.) The trial court overruled the demurrer, concluding the contract claims were sufficiently certain and the Government Claims Act does not apply to contract claims. (*City of Stockton*, at p. 737.) The City and the Agency then filed a cross-complaint against plaintiff for breach of contract, misrepresentation and failure of consideration. They also filed a petition for writ of mandate with this court, seeking to overturn the order overruling their demurrers. (*Ibid.*)

This court granted writ relief, concluding plaintiff's claims are subject to the Government Claims Act, which plaintiff failed to satisfy. However, we further concluded that, if the City and the Agency continue to pursue their cross-complaint, plaintiff may file a cross-complaint of its own asserting defensive claims. (*City of Stockton*, *supra,* 42 Cal.4th at p. 737.) The California Supreme Court granted plaintiff's petition for writ of review and affirmed. (*Id.* at pp. 737, 748.) However, the high court

5

modified our decision to include directions to the trial court to grant plaintiff leave to amend and to omit directions to permit plaintiff to file a cross-complaint. (*Id.* at p. 748.)

On March 17, 2008, plaintiff filed a third amended complaint containing eight causes of action: (1) restitution for conversion of the Civic Agreement; (2) restitution for conversion of the Hotel plans prepared at plaintiff's expense; (3) restitution for conversion of a tax credit partnership between plaintiff and Paramount; (4) restitution for the value of a related cinema lease; (5) inverse condemnation of the Civic Agreement; (6) inverse condemnation of the cinema lease; (7) conversion of the B&M contract mentioned in the February 2002 agreement between plaintiff and the Agency; and (8) declaratory relief. The fourth through seventh causes of action were stated against the City and the Agency alone.

The Youssefi defendants demurred to the third amended complaint. The trial court overruled the demurrers to the first through third causes of action but sustained the demurrer to the eighth cause of action for declaratory relief without leave to amend. Among other things, the court concluded the second cause of action for conversion of the Hotel plans is not preempted by federal copyright law. The Youssefi defendants thereafter filed an answer to the third amended complaint.

On November 24, 2008, plaintiff filed a fourth amended complaint containing just three causes of action: (1) restitution for conversion of the Hotel plans; (2) restitution for conversion of the Paramount partnership; and (3) restitution for conversion of the Civic Agreement.

On April 15, 2009, the trial court sustained demurrers of the City and the Agency to the fourth amended complaint and ordered dismissal of the action as to those defendants.

On October 25, 2010, the trial court granted the Youssefi defendants' motion for judgment on the pleadings as to the first cause of action, concluding that claim is

6

preempted by federal copyright law. The court also denied leave to amend, concluding plaintiff failed to demonstrate it could allege facts sufficient to state a claim.

On December 21, 2010, the trial court granted the Youssefi defendants' motion for summary adjudication on the remaining claims. The court also denied plaintiff's request for leave to amend. On the second cause of action for conversion of the alleged partnership with Paramount, the court concluded plaintiff admitted no such partnership ever came into existence. Hence, there could have been no conversion of that which did not exist. On the third cause of action for conversion of the Civic Agreement, the court concluded a contract cannot be the subject of a conversion claim. The court further concluded there could be no conversion of the contract because the terms of the CFI Agreement were significantly different from those of the Civic Agreement. Thus, according to the court, "whatever contract rights [plaintiff] allegedly had, such rights were not transferred to" the Youssefi defendants in their contract with the Agency.

On January 25, 2011, the trial court entered judgment for the Youssefi defendants. Plaintiff appeals.

## DISCUSSION

### I

### *Operative Pleading*

In its appellate briefs, plaintiff repeatedly cites the third amended complaint as the basis for various factual assertions. However, the orders granting judgment on the pleadings and summary adjudication that are before us on this appeal were based on the fourth amended complaint. It is this latter pleading on which plaintiff must rely.

Plaintiff asserts the trial court's rulings on the fourth amended complaint "departed substantially from the law of the case" established in a prior ruling by that same court overruling demurrers to the third amended complaint. To the extent plaintiff is thereby asserting the trial court was bound by its earlier ruling, thus bringing the third

7

amended complaint into play in this appeal, plaintiff is wrong. " 'The doctrine of "law of the case" deals with the effect of the first appellate decision on the subsequent retrial or appeal: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' [Citations.]" (*Provience v. Valley Clerks Trust Fund* (1984) 163 Cal.App.3d 249, 256.) The doctrine has no application to prior rulings of the same trial court. (*Ibid.*)

II

*Evidentiary Matters*

An appellant's brief must contain a summary of the significant facts in the record. (Cal. Rules of Court, rule 8.204(a)(2)(C).) In addition, any reference to a matter in the record must be supported by a citation to the volume and page number in the record where the matter appears. (Cal. Rules of Court, rule 8.204(a)(l)(C).)

Plaintiff makes a number of factual assertions in its opening brief that fail to satisfy this latter requirement. In other instances, plaintiff includes citations, but those citations do not in fact establish the matter asserted. At still other places, plaintiff includes a citation to a document in the record but includes no citation to where or how that document was authenticated.

As an example of the latter, plaintiff states: "[Plaintiff] did not know that sometime in the four months between August 28 and the end of 2001, the [A]gency and the Youssefi defendants had begun taking [plaintiff]'s financial planning for the [H]otel. They planned to 'break up' [plaintiff]'s contract in favor of Mr. Youssefi." In support, plaintiff cites a document entitled, "Plaintiff's List of Exhibits to its Opposition to Motion for Summary Adjudication." That document identifies exhibit No. 3 in the list as "Email from Steven Pinkerton to Patrick Sabelhaus, 12/24/01." The origin of that exhibit is stated to be the "Youssefi Document Production; Cyrus Youssefi Deposition Ex. 2." Exhibit No. 3 attached to the list appears to be an email message from Pinkerton to the

8

address prspat@mgci.com ,which on page two of the document is identified as the email address of "Sabelhaus." Along with that email message are what appear to be several prior email messages between the same parties.

Plaintiff provides no citation to anything in the record that would authenticate that this document is what it appears to be. Plaintiff acknowledges the Youssefi defendants objected to this evidence based on lack of authenticity and hearsay. Plaintiff asserts the evidence is authenticated by virtue of the fact it came from the Youssefi defendants' document production and was exhibit No. 2 to Youssefi's deposition. However, as support for that assertion, plaintiff cites nothing more than the list of exhibits document mentioned above which, as indicated, identifies as the origin for the email the document production and deposition. Plaintiff does not cite the discovery itself. Thus, plaintiff cites no sworn statement authenticating the document.

Plaintiff contends it was not required to provide any further authenticity for the document than the fact it was produced by the Youssefi defendants in their discovery responses. Plaintiff cites the California Law Revision Commission comment to Evidence Code section 1400 for the proposition that "[a]uthentication may be supplied by reference in the pleadings." Evidence Code section 1400 states: "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." The Law Revision Commission comment states: "Under Section 1400, as under existing law, a writing may be authenticated by the presentation of evidence sufficient to sustain a finding of its authenticity. [Citation.] Under Section 1400, as under existing law, the authenticity of a particular writing also may be established by some means other than the introduction of evidence of authenticity. Thus, the authenticity of a writing may be established by stipulation or by the pleadings."

9

The fact that plaintiff attached a copy of an email message to its list of exhibits filed in opposition to summary judgment does not thereby provide authentication for that email within the meaning of Evidence Code section 1400. Code of Civil Procedure section 420 defines the "pleadings" as "the formal allegations by the parties of their respective claims and defenses, for the judgment of the court." In other words, pleadings are the complaint, the answer and similar documents. The fact that a complaint may allege the authenticity of a document and the answer may fail to deny it, thereby authenticating the document for purposes of the litigation, does not mean that any document filed with the court can have this effect.

Plaintiff also cites Evidence Code section 1414, which reads: "A writing may be authenticated by evidence that: . . . (a) The party against whom it is offered has at any time admitted its authenticity; or . . . (b) The writing has been acted upon as authentic by the party against whom it is offered." Plaintiff cites this section for the proposition that "[a] document is authenticated by evidence that the party against whom it is offered has admitted its authenticity, as for example by producing it in discovery." However, whether production of a document in discovery would amount to an admission of its authenticity necessarily depends on the nature of the discovery request. For example, in the case of the purported email mentioned above, if a discovery request to the Youssefi defendants had sought all communications generated by Steven Pinkerton, the fact the document was produced by the Youssefi defendants would thereby establish its authenticity as an email from Pinkerton, at least as against the Youssefi defendants.

But in the present matter, plaintiff does not provide any citation to the discovery request to which the document purportedly responded. Nor does plaintiff cite any declaration or other evidence establishing that the document was produced by the Youssefi defendants in response to the discovery request. All we have is plaintiff's unsworn submission of an exhibits list asserting that to be the case.

10

Plaintiff cites *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519 (*Ambriz*), in which the Court of Appeal held the trial court erroneously sustained objections to various pieces of evidence submitted by the plaintiff in opposition to summary judgment. One such document was a single page from the deposition of Detective Pitcher. The defendant objected to the evidence on the grounds that the plaintiff failed to include a reporter's certificate and the attorney for the plaintiff failed to submit a declaration of personal knowledge, failed to lay a foundation, and failed to present any basis for contending the excerpt was what it purported to be. (*Id.* at p. 1526.) The Court of Appeal rejected these objections for a number of reasons: "First, the objections based on Ambriz's attorney's failure to attest to personal knowledge of the deposition excerpt, lay a foundation, or authenticate the excerpt are without merit. Respondents presented excerpts from the same deposition in support of their motion for summary judgment. [Citation.] Respondents admitted the authenticity of the transcript of Detective Pitcher's deposition by seeking to use portions of that deposition in support of their motion for summary judgment. Raising an objection as to lack of authentication of an excerpt from the same deposition defendants themselves relied upon in their motion is disingenuous, unless defendants can establish that the excerpt Ambriz offered was not part of the deposition transcript. Respondents made no such allegation. Further, Ambriz's attorney attested, under penalty of perjury, that the copies of the documents lodged constituted 'true and correct copies of what they purport to be.' This was sufficient to overcome respondents' generic objections to this evidence." (*Id.* at p. 1527, fn. omitted.)

Obviously, *Ambriz* has no application here. Plaintiff presents nothing to suggest the Youssefi defendants used the purported email from Pinkerton themselves or otherwise authenticated the document. Nor is there any attestation by plaintiff or its attorney that the email is what it appears to be.

For purposes of this appeal, we consider only those factual assertions of the parties that are supported by proper citations to the record and for which the citation provided in

11

fact supports the assertion. As for documentary evidence, we consider only that which has been properly authenticated.

III

*Copyright Exclusivity*

The trial court granted judgment on the pleadings on the first cause of action of the fourth amended complaint. A motion for judgment on the pleadings is subject to the same rules governing a general demurrer. (*Ponderosa Homes, Inc. v. City of San Ramon* (1994) 23 Cal.App.4th 1761, 1767.) The court must accept as true the allegations of the challenged pleading and all matters subject to judicial notice. (*American Airlines, Inc. v. County of San Mateo, supra,* 12 Cal.4th at p. 1118.) Like a demurrer, the grounds for the motion must appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice. (Code Civ. Proc., § 438, subd. (d); *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 548; *Ponderosa Homes, supra,* 23 Cal.App.4th at p. 1767.) On appeal, we review the judgment on the pleadings de novo, applying the same test applied by the trial court. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515-516; *Rolfe v. California Transportation Comm.* (2002) 104 Cal.App.4th 239, 242.)

In the first cause of action, plaintiff waives its tort claim for conversion of the architectural plans for the Hotel and seeks restitution for its investment in those plans and any profits obtained by the Youssefi defendants from the Hotel renovation project. " 'There are several potential bases for a cause of action seeking restitution. For example, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason. [Citations.] Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory . . . . [Citations.] In such cases, where

12

appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment.' [Citation.]" (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370.)

The fourth amended complaint alleges that, in January 2002, plaintiff was in the process of preparing an application for federal and state tax credits for elderly housing on the upper floors of the Hotel. However, that same month, the Agency told plaintiff it "wished to substitute Cyrus Youssefi and his company for [plaintiff] in the upper floors of the [H]otel." According to the complaint, the Agency informed plaintiff that it needed the latter's consent for such substitution and that, in exchange, the Agency would pay plaintiff for its investment in the Hotel.

The complaint further alleges that, on February 19, 2002, the Agency asked plaintiff for its Hotel architectural plans "which the [A]gency wished to give Mr. Youssefi for his use in his [H]otel tax credit application." According to the complaint, "[plaintiff] transferred the plans in trust to the [A]gency on that day, pending the [A]gency's formal agreement to restore [plaintiff's] investment." The Agency signed an agreement providing that the plans are the property of plaintiff and can be used by the Agency, the City or others subject to an agreement with plaintiff that included reimbursement of costs incurred by plaintiff to date.

According to the complaint, the Agency thereafter transferred plaintiff's Hotel renovation contract "to Mr. Youssefi and his company." In addition, "[t]he [A]gency gave [plaintiff's] plans to Youssefi without [plaintiff's] consent in violation of the" February agreement described above. Youssefi's architects then used the plans to prepare Youssefi's application for tax credits. Plaintiff alleges that Youssefi and his attorney, Patrick Sabelhaus, knew that when Youssefi "used [plaintiff's] plans to make Youssefi's tax credit application on March 25, 2002 that the [A]gency had not honored the commitments the [A]gency, Youssefi, and Sabelhaus had made . . . ."

13

The trial court granted the Youssefi defendants' motion for judgment on the pleadings on the first cause of action, concluding the court had no subject matter jurisdiction over such claim because it is based on federal copyright law. According to the court: "[T]he Fourth Amended Complaint alleges that the Agency made a deal with [plaintiff] to obtain a copy of [plaintiff's] architectural plans; that the Agency then provided a copy of the plans to the Youseffi [*sic*] defendants; and that the Youseffi [*sic*] defendants used the copy of [plaintiff's] architectural drawings to prepare part of a tax credit application. The allegations are therefore for wrongful use of the plans, through copying, display and/or use of the plans to prepare the tax credit application. . . . Such allegations clearly assert legal and equitable rights that are equivalent to the exclusive rights within the general scope of copyright . . . ."

On plaintiff's argument that it is not alleging the copying of copyrighted material but the conversion of a given representation of that material, the court explained: "[P]laintiff sought to avoid the foregoing conclusion [of copyright preemption] by asserting that in 17 U.S.C. [section] 202, a distinction is drawn between ownership of the copyright and ownership of any material object in which the copyrightable work is imbedded. Using the example of a coffee cup with a hotel chain's logo embedded thereon, plaintiff contended that an action for conversion of the cup would not be preempted by federal copyright law simply because the item converted (the cup) contained a copyrighted logo on its face.

"The argument proves too much[.] In this case plaintiff does not assert conversion of the paper on which the copyrightable work is printed[.] To the contrary, plaintiff's complaint specifically alleges that [plaintiff] caused the preparation of the hotel plans[;] that [plaintiff] transferred the plans to the Agency 'in trust;' that the tax credit application required an accurate set of plans; and that the Youseffi [*sic*] defendants used [plaintiff's] architectural drawings to prepare part of the tax credit application[.] As noted above, the alleged wrong was therefore accomplished through the wrongful copying, display and/or

14

use of the plans as such to prepare the tax credit application.  [Citation.]  To construe such a claim as outside the reach of federal preemption would defeat the intent of Congress to create a uniform national copyright law protecting reproduction, performance, distribution, and display of copyrightable works.  [Citation.]"

Plaintiff contends the trial court erred in concluding the first cause of action is preempted by federal copyright law.  Federal preemption has been recognized in three general areas:  (1) where the federal law expressly so states, (2) where the federal law is so comprehensive that it leaves " ' "no room" for supplementary state regulation,' or (3) where the federal and state laws 'actually conflict[]'  [Citation.]"  (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 567.)  As to the latter, an actual conflict arises "when 'compliance with both federal and state regulations is a physical impossibility,'  [citation] or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . .' " (*Fidelity Federal S. & L. Assn. v. de la Cuesta* (1982) 458 U.S. 141, 153 [73 L.Ed.2d 664, 675].)

"[17 United States Code] [s]ection 301(a) of the [1976 Copyright Act (the Act)] expressly preempts state laws that protect 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [section 106].'  [Citation.]  Section 301(b) represents the obverse of subsection (a), allowing states to regulate 'activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by [section 106].' [Citation.]  The Act does not preempt all state common law affecting copyright material, but only state common law meeting two conditions.  [Citation.]  'Thus, for preemption to occur under the Act, two conditions must be met:  first, the subject of the claim must be a work fixed in a tangible medium of expression and come within the subject matter or scope of copyright protection . . ., and second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106.'  [Citations.]"  (*Kabehie v. Zoland* (2002) 102 Cal.App.4th 513, 520, fn. omitted.)

15

In the present matter, it is undisputed the first condition is met. The architectural plans are a work fixed in a tangible medium that falls within the scope of copyright protection. The issue here is whether the right asserted in the first cause of action is equivalent to the exclusive rights contained in federal copyright law.

Plaintiff contends that, because it is not the holder of the copyright for the architectural plans, its claim stemming from use of those plans by the Youssefi defendants cannot be subject to copyright preemption. According to plaintiff, only the copyright holder, i.e., the architect, can sue for copyright infringement. As in the court below, plaintiff relies on 17 United States Code section 202, which reads: "Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object."

Plaintiff argues the court below mistook its claim as one based on taking of the paper on which the architectural plans were drawn. However, plaintiff argues, it "did not pay several hundred thousand dollars for paper; it paid for plans." Nevertheless, in purchasing the plans, plaintiff did not purchase the copyright. That remained with the architect. Thus, plaintiff argues, its claim is not one for copyright infringement.

The Youssefi defendants counter that, however characterized by plaintiff, the gist of the claim is that the Youssefi defendants improperly reproduced and distributed the architectural plans as part of their credit application, and such claim falls within the exclusive ambit of federal copyright law. As for plaintiff's claim that its action cannot be for copyright violation because plaintiff is not the copyright holder, the Youssefi defendants assert that "courts regularly apply [c]opyright pre-emption against plaintiffs who do not own the copyright of the work in dispute." (See *Fleet v. CBS, Inc.* (1996) 50

16

Cal.App.4th 1911, 1913, 1916; *Laws v. Sony Music Entertainment, Inc.* (9th Cir. 2006) 448 F.3d 1134, 1135-1136, 1142-1143.) The Youssefi defendants argue copyright law does not preempt certain individuals, i.e., copyright holders, but certain causes of action, i.e., those based on rights encompassed by the copyright act.

Plaintiff disagrees that federal copyright law preempts claims asserted by anyone other than the copyright holder. It cites *Silvers v. Sony Pictures Entertainment, Inc.* (9th Cir. 2005) 402 F.3d 881, at page 884, which includes the following quote from a treatise on commercial litigation in federal court: " 'If a claimant is not a proper owner of copyright rights, then it cannot invoke copyright protection stemming from the exclusive rights belonging to the owner, including infringement of the copyright.' " (Accord *Smith v. Jackson* (9th Cir. 1996) 84 F.3d 1213, 1218 ["To establish a successful copyright infringement claim, a plaintiff must show that (1) she owns the copyright, and (2) defendant copied protected elements of the copyrighted work"].)

The fact that one may not *successfully* sue for copyright infringement because he or she is not the copyright holder does not mean he or she is not preempted from attempting to sue on a claim that amounts to copyright infringement. As argued by the Youssefi defendants, it is the nature of the action not the identity of the plaintiff that controls. If one sues another for making unauthorized copies of a protected work, and the alleged basis for precluding such copying is that the work is protected by copyright, then that action is subject to copyright preemption. The federal court has exclusive jurisdiction to decide who is entitled to enforce the copyright.

Nevertheless, we agree with plaintiff its claim in the first cause of action does not fall within the exclusive ambit of federal copyright law. The trial court suggested plaintiff's claim is not one for conversion of the paper on which a copyrightable work is printed. That is true. However, the court went on to conclude the claim must therefore be for infringement of the copyrightable work. However, there is a third option. Using the coffee cup analogy, an action can be for conversion of a plain cup, for conversion of a

17

cup with a protected hotel logo on it, or for infringement of the copyright for the hotel logo. The fact that one may not be suing for conversion of a plain cup does not thereby mean the suit is for infringement of the copyright for the logo thereon. It may instead be for conversion of a cup whose value is enhanced by the presence of the logo.

In the present matter, plaintiff is not suing the Youssefi defendants for conversion of a plain piece of paper. Nor is plaintiff suing them for having copied or used the architectural plans in violation of the architect's copyright. Rather, plaintiff is suing for conversion of a particular object on which the copyrighted work is embodied. As alleged in the fourth amended complaint, plaintiff obtained a copy of the architectural plans from the architect, the copyright owner, for use in plaintiff's credit application. That copy was then given to the Agency who in turn gave it to the Youssefi defendants. The latter used the copy of the architectural plans to prepare part of its own credit application for the same building project. Thus, the copy of the plans was used as the architect intended, but by a different party. This does not state a claim for copyright violation but for conversion of a particular object containing a copyrightable work. (See 17 U.S.C. § 202.) We therefore conclude the trial court erred in granting judgment on the pleadings on the first cause of action of the fourth amended complaint on the basis of federal copyright preemption.

IV

*Evidentiary Objections*

Plaintiff contends the Youssefi defendants filed boilerplate objections to every piece of evidence plaintiff presented in opposition to the summary adjudication motion. Although not expressly identified, we assume plaintiff is referring to the written objections filed by the City, the Agency and the Youssefi defendants on November 18, 2010, which challenged 78 pieces of documentary evidence submitted by plaintiff. Plaintiff argues those objections were "unarticulated" except to mention "authentication, hearsay, or another touchstone" and are the type condemned by the state high court in

18

*Reid v. Google, Inc.* (2010) 50 Ca1.4th 512. After citing a few examples, plaintiff argues the documents in question were sufficiently authenticated by having been produced by one or more of the defendants in this matter.

As discussed earlier, plaintiff has failed to present any citations to the record where at least some of the documents in question were authenticated through discovery or otherwise. Plaintiff's assertion to that effect in its list of exhibits in opposition to summary judgment will not suffice.

At any rate, plaintiff fails to explain the significance of its evidentiary argument in the present litigation. For example, plaintiff does not cite to the trial court's ruling on the objections. Although plaintiff asserts the court sustained the objections, the citation it provides does not so indicate. We are therefore left to assume the court did so. But even if the objections were sustained, plaintiff makes no attempt to suggest that, if the court had instead overruled the objections, this would have changed the outcome of the motion for summary adjudication. A determination in the trial court will not be set aside for the improper exclusion of evidence unless such exclusion resulted in a miscarriage of justice. (Evid. Code, § 354.) A miscarriage of justice occurs where a different result would have been probable if the error had not occurred. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) Because plaintiff makes no attempt to suggest that is the case here, we need not consider his evidentiary argument.

V

*Leave to Amend*

In the fourth and final section of its opening brief on appeal, plaintiff asserts the trial court erred in denying plaintiff leave to amend.

At oral argument on November 23, 2010, on the Youssefi defendants' motion for summary adjudication, plaintiff sought leave to amend the complaint to allege interference with both its contract with the Agency and its contract with Paramount. Plaintiff also explained to the court that it intended to submit a verified complaint with

19

various critical documents attached in order to provide authentication for them. Plaintiff acknowledged trial of the case was set for the following month but offered to stipulate to continue the trial date or expedite filing of the amended complaint. The court took the matter under submission. That same day, plaintiff filed a written motion to amend.

On December 21, 2010, the trial court issued its order on the Youssefi defendants' motion for summary adjudication. Among other things, the court denied the motion to amend, explaining: "Defendants are correct in observing that this matter is on the Fourth Amended Complaint, having been filed over 7 years ago, and that the motion now comes only weeks in advance of trial. Moreover, Plaintiff does not provide specific facts to support a new and/or different claim, or how such a claim, even if otherwise appropriate, could overcome the bar of the period of limitations."

Notwithstanding the foregoing, on December 23, 2010, plaintiff filed a further motion to amend the complaint. Attached to the motion was a proposed fifth amended complaint. The first cause of action of this fifth amended complaint seeks declaratory relief that plaintiff holds equitable title to the Hotel. The second cause of action alleges intentional interference with the Civic Agreement. In the third and final cause of action, plaintiff seeks an accounting. Attached to this proposed complaint are various key documents purportedly claimed by the Youssefi defendants not to have been properly authenticated.

The trial court denied plaintiff's motion to file a fifth amended complaint. The court concluded the Youssefi defendants would be prejudiced by the late amendment and, in any event, the motion to amend did not comply with California Rules of Court, rule 3.1324. That rule requires a motion to amend to include a statement of the allegations in the previous pleading that are proposed to be deleted and a statement of the allegations proposed to be added.

Plaintiff recites the foregoing procedural posture of the case in its opening brief. Plaintiff further argues: "California for more than a hundred years has followed the

20

common law rule that equitable title passes to the buyer on the execution of a land sale contract." By implication, plaintiff asserts it obtained equitable title to the Hotel upon execution of the Civic Agreement.

Assuming plaintiff is correct on the law of equitable title, that is not the issue before us. Even if plaintiff has a viable claim, the question here is whether the trial court erred in denying leave to amend. On that issue, plaintiff provides no argument whatsoever.

An application to amend a pleading is addressed to the sound discretion of the trial court, which discretion shall be upheld absent a manifest or gross abuse of discretion. The burden is on the plaintiff to demonstrate such abuse. (*Sullivan v. City of Sacramento* (1987) 190 Cal.App.3d 1070, 1081.) " ' "When a request to amend has been denied, an appellate court is confronted by two conflicting policies. On the one hand, the trial court's discretion should not be disturbed unless it has been clearly abused; on the other, there is a strong policy in favor of liberal allowance of amendments. This conflict 'is often resolved in favor of the privilege of amending, and reversals are common where the appellant makes a reasonable showing of prejudice from the ruling.' " [Citation.] If the original pleading has not framed the issues in an articulate and precise manner, a plaintiff should not be precluded from having a trial on the merits.' [Citation.] '[I]t is an abuse of discretion to deny leave to amend where the opposing party was not misled or prejudiced by the amendment.' " (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945.)

In the present matter, plaintiff essentially sought to defeat the Youssefi defendants' motion for summary adjudication by presenting new claims. One of the claims asserted in the fourth amended complaint was for conversion of the Civic Agreement. Plaintiff sought to recast that claim as one in which it retained rights in the Civic Agreement and thereby has an equitable interest in the Hotel. In the alternative, plaintiff sought to allege intentional interference with the Civic Agreement.

However, " '[a] party cannot generally defeat a summary judgment by pointing to a theory of liability or defense that has no basis in the pleadings." (*Dang v. Smith* (2010) 190 Cal.App.4th 646, 664.) "If a party seeks to avoid summary judgment by going outside the pleadings, it is incumbent upon him to move to amend in a timely fashion." (*Ibid.*, italics omitted.) " '[E]ven if a good amendment is proposed in proper form, unwarranted delay in presenting it may--of itself--be a valid reason for denial.' " (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486.)

To the extent plaintiff has good claims for equitable ownership of the Hotel or intentional interference with contract, it was well aware of the facts giving rise to such claims long before attempting to assert them on the eve of having its case eliminated on summary adjudication. Nevertheless, plaintiff did not raise the matter until oral argument on the summary adjudication motion and did not present a proposed amendment until after the court granted summary adjudication to the Youssefi defendants. In other words, plaintiff waited until the court rejected its existing claims before trying to assert new ones. Under these circumstances, we cannot say the trial court abused its discretion in denying leave to amend.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to vacate its order granting and enter a new order denying the Youssefi defendants' motion for judgment on the pleadings on the first cause of action of the fourth amended complaint. Summary adjudication on the remaining claims of the fourth amended complaint is affirmed. Defendants' request for judicial notice of Local Rule 6.02 of the Superior Court of Sacramento is denied as irrelevant to the issue that resolves

22

the case on appeal.  In light of the mixed result achieved in this matter, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


      HULL      , J.


I concur:


     DUARTE     , J.

RAYE, J.

 I concur fully in the judgment and in the holding that plaintiff's claim in its first cause of action was never intended to nor did it state a claim for copyright infringement. I write separately only to note that the interest sought to be vindicated was not the creative efforts of the architect, whose copyright would be unaffected by the litigation, but plaintiff's ownership interest in the plans. Had the plans not been copyrighted, plaintiff could still state a claim for conversion. The fact that they are does not transform a prosaic state law conversion action into a federal case for copyright infringement. Regrettably, plaintiff's effort to bring clarity to the issue by analogizing to copyrighted images on a coffee cup may indeed have "prove[d] too much" as suggested by the trial judge. Notwithstanding the imperfect analogy, the essence of plaintiff's cause of action is clear and federal preemption has no application here.

                RAYE    , P. J.

1