Filed 3/17/25  YCS Investments v. County of Santa Clara CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| YCS INVESTMENTS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> THE COUNTY OF SANTA CLARA, <br><br> Defendant and Respondent. | H051381 <br> (Santa Clara County <br> Super. Ct. No. 17CV311946) |

Appellant YCS Investments, Inc. (YCS) is a real estate developer with a large undeveloped property located partially in Santa Clara County.  YCS sued the County of Santa Clara (County) for, among other things, negligent misrepresentations in a 2014 settlement agreement.  Although this claim survived motions for judgment on the pleadings and for summary adjudication, after a bench trial the trial court denied the claim as barred by governmental immunity and by YCS's failure to present a timely notice of claim.  As explained below, we affirm.

## I.  BACKGROUND

YCS is an owner (or agent of an owner) of a 2,150-acre property known as Young Ranch, which is partly in Santa Clara County and partly in the City of San José (San José).  YCS has been seeking to develop residential lots on Young Ranch since 2012. The ranch also contains a valuable habitat for an endangered species of butterfly, which

is important to the Santa Clara Valley Habitat Plan, a joint conservation plan under the federal Endangered Species Act (16 U.S.C. § 1531 et seq.).

## A. The Settlement Agreement

In 2012 YCS applied for approval of a residential development project on Young Ranch.  Because the proposed development was on a hillside, it was subject to density limitations in the County's General Plan.  To satisfy these limitations, YCS proposed to leave open space, including the habitat for the endangered butterfly, on the portion of the ranch in San José.  In 2013 YCS sued to enjoin implementation of the Santa Clara Valley Habitat Plan.  In addition, after the County Planning Commission denied YCS's application, finding the proposed project inconsistent with the County's General Plan, YCS appealed the denial.  Shortly after the appeal was filed, the County initiated settlement discussions. and in August 2014, YCS and the County reached a settlement agreement.

In the settlement agreement, YCS agreed to submit to the County a single application for developing residential lots located within Santa Clara County and to leave as open space approximately 1,950 acres in San José.  YCS also agreed to submit an application to amend the County's zoning ordinance to allow an open space easement on YCS's property in San José to satisfy density limitations on the proposed development.  In addition, if this application was approved, YCS agreed to seek approval from the Santa Clara Valley Habitat Agency and to satisfy any affordable housing obligations by paying in lieu fees.

In turn, the County agreed to expedited review in which it would begin preparing an environmental impact report (EIR) within 30 days and, absent an extension, to publish a draft EIR within a year.  The County also agreed that "the current County General Plan does not preclude the Board of Supervisors from considering open space easement dedications on adjacent property in other jurisdictions for purposes of meeting open space requirements associated with cluster subdivisions."  However, the County did not

promise what the EIR would say, and the settlement agreement expressly stated that the County had not determined whether to approve the proposed zoning ordinance amendment or the proposed project and retained discretion to approve or deny either.

YCS and the County also agreed that San José should be involved in evaluating the proposed development and that YCS would pay the reasonable costs of San José doing so. However, the settlement did not grant San José any right to approve or disapprove YCS's application.

Finally, the settlement agreement included a damages waiver: "With the exception of claims to enforce any express monetary obligations under this Agreement, the parties hereby waive any and all claims for money damages as a remedy."

## B. Subsequent Conduct

In accordance with the settlement agreement, YCS submitted a revised project application, and the County began its review process.

County planners were not supportive. In December 2015, Bill Shoe, a County planner and zoning administrator, authored a confidential memorandum, which described YCS's application as "problematic and unsupportable by the Planning Office." In September 2016, the County's planning manager, Rob Eastwood, met with YCS's vice president, Wayne Costa, and YCS's attorney, Cecily Barclay, and informed them that YCS's project "was inconsistent with the County's general plan, because [YCS] had not submitted an application to amend the general plan" to allow the County to use open space in San José to satisfy density limitations.

In addition, in February 2017, YCS received a pre-release "screen check" of an apparently belated draft EIR, which stated that the County's General Plan did not permit a density transfer from open space located in San José. When YCS objected, the County responded that the settlement agreement stated only that the General Plan did "not preclude the Board of Supervisors from considering open space easement dedications on adjacent property in other jurisdictions," not that the General Plan permitted such a

3

transfer. On February 9, 2017, the County released the draft EIR, which continued to state that the project required an amendment to the General Plan. Finally, the draft EIR stated that San José's approval was needed for the proposal.

YCS contested the positions taken by County planning officials and the draft EIR. After the October 2016 meeting with Rob Eastwood, YCS sent the County a letter asserting that the zoning amendment YCS had proposed was consistent with the General Plan and that in the settlement agreement the County had agreed. YCS also stated that "any contrary determination by the County on the issue of whether the proposed Zoning Text Amendment is consistent with the General Plan would be a breach of the Settlement Agreement." In addition, in February 2017, after the pre-release screen check of the draft EIR, YCS sent the County a letter contending that the draft EIR contradicted the County's representation in the settlement agreement that amendment of the General Plan was not required. Pending resolution of the dispute concerning the settlement agreement, YCS paused the Young Ranch development project.

## C. Proceedings Below

### 1. The Initial Complaint

In June 2017, approximately eight months after the meeting with the County's planning manager Rob Eastwood, YCS sued the County seeking a declaration that the County's General Plan permits density transfers from properties in adjacent jurisdictions.

### 2. The Notice of Claim

On March 15, 2018, YCS submitted a notice of claim to the County. In the notice, YCS claimed that the "County induced YCS to enter [the] August 25, 2014 Settlement Agreement based on material and negligent misrepresentations." The notice also asserted that this claim did not accrue until February 2018, the month before.

On April 27, 2018, the County rejected YCS's claim as to alleged conduct on or after September 15, 2017 and returned the claim without action as to alleged conduct before September 15, 2017.

4

### 3. *The Second Amended Complaint*

In July 2018, YCS filed a second amended complaint, the now operative pleading. In addition to again requesting declaratory relief, the second amended complaint added a claim for damages based on negligent misrepresentation. In support of the negligent misrepresentation claim, YCS alleged that the County's representations in the settlement agreement concerning density transfers and the need for San José's approval were false or misleading; the County lacked reasonable ground for believing these representations; the County intended YCS to rely on the representations, which YCS reasonably did; and YCS was damaged as a result.

### 4. *Pretrial Motions*

In August 2019, the County moved for judgment on the pleadings, arguing that governmental immunity barred YCS's negligent misrepresentation claim. The trial court denied the motion. Although the court recognized that the Government Code expressly bars misrepresentation claims against public entities, and that the damages claim in the second amended complaint was labeled negligent misrepresentation, it observed that the complaint alleged "facts consistent with a breach of promise" and "the overall flavor of the complaints sounds in contract." Accordingly, the trial court ruled that the second amended complaint sufficiently pleaded a claim based in contract, which governmental immunity does not bar.

In January 2020, the County moved for summary judgment, but the trial court denied the motion. The court held that the declaration sought by YCS was consistent with the plain language of the settlement agreement. In addition, the court found triable issues whether the County's alleged misrepresentations concerned past or existing facts and therefore were actionable.

Additionally, in April 2022, the County admitted that the interpretation of the settlement asserted in YCS's declaratory relief claim was correct and YCS was entitled to the requested declaration.

#### 5. *The Trial and the Statement of Decision*

In November 2022, a bench trial was held on YCS's remaining claim for negligent misrepresentation. The following June the trial court issued a final statement of decision finding in favor of the County on YCS's negligent misrepresentation claim.

The trial court ruled that the negligent misrepresentation claim failed on multiple grounds. The court first held the claim time-barred because YCS learned of the County's alleged misrepresentations by February 2017, more than a year before submitting its March 2018 notice of claim. The trial court also ruled that governmental immunity barred YCS's damages claim because, despite the ruling on the motion for judgment on the pleadings that it had alleged a contract claim, at trial YCS elected to assert negligent misrepresentation, a tort claim. The trial court also ruled that the damages waiver in the settlement agreement barred any contractual damages and that YCS had failed to prove any misrepresentation of past or existing fact.

In July 2023, the trial court entered judgment, and YCS timely appealed.

## II. DISCUSSION

### A. Immunity

YCS contends that the trial court erred in ruling that governmental immunity bars its negligent misrepresentation claim because, according to YCS, that claim "arises" out of a contractual relationship. Reviewing the trial court's application of the governmental immunity statutes de novo (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683), we disagree. The Government Claims Act (Gov. Code, § 810 et seq.[1]) bars tort claims against public entities in general and misrepresentations claims in particular. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741-742 (*City of Stockton*) [referring to the statute in question as the Government Claims Act].) Moreover, this immunity is not lost simply because a misrepresentation claim is factually related to a contract

---

[1] Subsequent undesignated statutory references are to the Government Code.

6

Under the Government Claims Act, "all government tort liability must be based on statute," and "in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable." (*County of San Bernardino v. Superior Court* (2022) 77 Cal.App.5th 1100, 1107-1108.) Additionally, the Act creates a "general rule of immunity for public entities." (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1045.) Section 815 provides that, unless otherwise provided by statute, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a).) In addition, there is a special rule against misrepresentation claims: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." (§ 818.8.)

YCS's damages claim falls squarely within the Government Claims Act's immunity against tort claims in general and misrepresentation claims in particular. The County is a public entity covered by the Act, and YCS has asserted a classic misrepresentation claim against it. In its second amended complaint, YCS alleged that the County made representations concerning the need to amend its General Plan and the need for San José's approval that "were not true, or otherwise were misleading." YCS also alleged that (1) the County lacked reasonable grounds for believing its representations, (2) it intended YCS to rely on the representations, (3) YCS reasonably relied, and (4) YCS was damaged as a result. These allegations cover the elements of negligent misrepresentation. (See, e.g., *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243 ["The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."].) Consequently, in its second amended

complaint YCS plainly advanced a negligent misrepresentation claim, which governmental immunity bars.

YCS points out that, in denying the County's motion for judgment on the pleadings, the trial court ruled that YCS's operative complaint "alleges facts consistent with a breach of a promise by County in the nature of a contract" and therefore may be interpreted as raising a contract claim. However, YCS chose not to take advantage of this ruling and assert a contract claim—which would have had to overcome the damages waiver in the settlement agreement. Instead, at trial YCS's counsel informed the court that "YCS' claim is one for negligent misrepresentation," and YCS argued in both its pretrial brief and its proposed statement of decision that the elements of negligent misrepresentation—not breach of contract—were satisfied.

YCS acknowledges that it asserted a negligent misrepresentation claim at trial, but contends that section 814 permits such a claim. Section 814 provides that "[n]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." As the Supreme Court has recognized, this section "reaffirms the longstanding rule that governmental immunity does not encompass contractual liability." (*City of Stockton*, *supra*, 42 Cal.4th at p. 741.) YCS argues that, under section 814, there also is no immunity where "the tort claim arises from a contractual relationship."

We disagree. Section 814 does not permit claims against public entities merely because they "arise" out of a contractual relationship, much less because they have some factual connection to a contract. Section 814 states that nothing in the Government Claims Act "affects *liability based on contract*." (§ 814, italics added.) Consequently, section 814 permits claims only if they are based on contract law. It does not allow tort claims merely because they have some factual connection to a contract. Instead, "[t]he policy of section 814 is consistent with [the general goal of limiting government liability for injuries] as it does not bar any immunities with respect to tort damages." (*Schooler v.*

8

*State of California* (2000) 85 Cal.App.4th 1004, 1014; see also *Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal.App.3d 816, 832-833 [holding governmental immunity bars misrepresentation claims even though the misrepresentations allegedly interfered with a contract with a public entity].)

In arguing that section 814 permits claims that arise from a contractual relationship but are not based on contract law, YCS relies on *Arthur L. Sachs, Inc. v. City of Oceanside* (1984) 151 Cal.App.3d 315 (*Sachs*). This reliance is misplaced. *Sachs* did not hold that section 814 permits a tort claim merely because, as a factual matter, it arises out of a contractual relationship. It held just the opposite: Section 814 permits *contract* claims even if they involve a misrepresentation. In *Sachs*, the plaintiff contended that a school district had misrepresented the value of a property he agreed to sell to the district. (*Id*. at p. 318.) Based on this misrepresentation, the plaintiff sued, seeking to rescind a real estate purchase agreement that it had entered in reliance on the district's misrepresentations. (*Id*. at p. 319.) Observing that an "action for rescission of the contract albeit based on mistake/fraud is still an action based on a contract" (*id*. at p. 322), *Sachs* concluded that governmental immunity did not bar the plaintiff's claim. (*Id*. at p. 323.) Nothing in *Sachs* suggests that a misrepresentation claim not based on contract law may be brought against a public entity because the alleged misrepresentation has some factual connection to a contract. To the contrary, *Sachs* states that, in determining whether governmental immunity applies, "the nature of the right sued upon" should be examined, and "if based on breach of a noncontractual duty [a claim] is tortious." (*Id*. at p. 322.)

Consequently, we conclude that the County is immune from YCS's negligent misrepresentation claim.

## B. The Claims Presentation Requirement

Even if YCS's damages claim were treated as a contract claim and not barred by governmental immunity, it still would fail because YCS did not present its notice of

9

claim to the County for more than a year after learning of the misrepresentations underlying the claim. Contending that its damages claim should be treated as a misrepresentation claim for purposes of the claim presentation requirement, YCS argues that its notice of claim was timely under the discovery rule. However, YCS had notice that misrepresentations were made in the settlement agreement more than a year before it presented its notice of claim, and it failed to show that with due diligence it could not have discovered the factual basis for its misrepresentation claim earlier. We therefore conclude that YCS's notice of claim was untimely whether the claim was for breach of contract or misrepresentation.

### 1. *Standard of Review*

When a claim accrues under the delayed discovery rule is generally a question of fact (see, e.g., *Jolly v. Eli Lilly & Co*. (1988) 44 Cal.3d 1103, 1112 (*Jolly*)), and trial court findings concerning such facts are reviewed for substantial evidence. (*Pearce v. Briggs* (2021) 68 Cal.App.5th 466, 474.) Under this standard, where, as here, the appellant bore the burden of proof, the question on appeal is not whether there was reasonable and credible evidence supporting the position that the trial court rejected. The question is "whether the evidence compels a finding in favor of the appellant as a matter of law." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc*. (2011) 196 Cal.App.4th 456, 466 (*Sonic Manufacturing*).) To satisfy this requirement, an appellant must show that the evidence it presented " 'was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ibid*.)

### 2. *Relevant Statutes and Legal Principles*

The Government Code imposes special procedural requirements on claims against local public entities. As a general rule, "all claims for money or damages against local public entities" must "be presented" to such entities (§ 905), and no suit for such a claim "may be brought . . . until a written claim therefor has been presented to the public entity

10

and has been acted upon by the board, or has been deemed to have been rejected by the board." (§ 945.4.) Claims "for death or for injury to person" must be presented within six months. (§ 911.2, subd. (a).) Other claims must be presented within one year of accrual. (*Ibid*.) Failure to present timely notice of a claim bars the claim. (*City of Stockton*, *supra*, 42 Cal.4th at pp. 734, 738.)

For purposes of these provisions, the accrual date is the same as under the applicable statute of limitations. (§ 901; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1244-1245.) Generally, claims accrue " 'when the cause of action is complete with all of its elements.' " (*Fox v. Ethicon Endo–Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).) There is, however, an exception to this general rule—the "discovery rule"—which applies, among other things, to misrepresentation claims (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1314-1319 (*E-Fab*)) and contract claims based on misrepresentations or breaches committed in secret (see, e.g., *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1233-1234; *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 825-826). Under the discovery rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." (*Fox*, at p. 803.)

In other words, under the discovery rule, claims ordinarily accrue when a plaintiff has inquiry notice, that is, "reason to at least suspect that a type of wrongdoing has injured" the plaintiff. (*Fox*, *supra*, 35 Cal.4th at p. 807.) If a plaintiff receives " 'actual notice of circumstances sufficient to put a prudent man upon inquiry,' " at that point the plaintiff "is deemed to have constructive notice of all facts that a reasonable inquiry would disclose." (*E-Fab*, *supra*, 153 Cal.App.4th at pp. 1318-1319; see also *id.* at p. 1319 [notice to an agent provides notice to the principal].) Such "notice" may be

11

either actual or constructive, and it may be provided by suspicion of an injury or a wrong. (*Id.* at p. 1319.)

In addition, there is an exception to the general rule that under the discovery rule claims accrue upon notice of injury or wrongdoing. "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." (*Fox, supra*, 35 Cal.4th at p. 807.) Consequently, accrual may be delayed if, despite conducting a reasonable inquiry, a plaintiff would not have discovered the factual basis for its claim within a reasonable period of time. Specifically, if a plaintiff receiving notice of a claim "pleads and proves" that a reasonable investigation would not have revealed the factual basis of the claim, the date of accrual may be extended to the date on which the factual basis was discovered. (*Id.* at p. 803.) However, to take advantage of this exception, a plaintiff " 'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Id*. at p. 808.) Moreover, a plaintiff has the burden to show that it exercised diligence and conducted a reasonable investigation into its claim. (*Ibid*.)

### 3. *Analysis*

YCS's notice of claim was untimely. As the trial court found, YCS first received notice that the County may have made misrepresentations in the settlement agreement in September 2016, when a County planning official informed YCS's Vice President that YCS's development proposal required an amendment to the General Plan and YCS sent a letter protesting that the County was breaching the settlement agreement. Moreover, in February 2017, contrary to what YCS now contends were the County's representations in the settlement agreement, the draft EIR stated that (1) the County's general plan did not permit a density transfer from an adjacent property under San José's jurisdiction and (2) written approval from San José was required for any modification of the County's land use policies. Consequently, YCS had notice that the County may have made misrepresentations in the settlement agreement no later than February 2017. However,

12

YCS did not present its notice of claim to the County until March 15, 2018, more than one year later. Consequently, even if YCS's damages claim was for breach of contract, and it had a one year to file a notice of claim (§ 911.2, subd. (a)), its notice of claim was untimely.

YCS contends that its claim did not accrue until February 2018 when the County produced documents showing that the representations made by the County in the settlement agreement were false, and it discovered the critical facts underlying its misrepresentation claim.[2] However, even under the discovery rule, accrual of a claim is not ordinarily delayed until discovery of the factual basis of the claim. Instead, under the discovery rule, claims ordinarily accrue "when the plaintiff has reason to suspect an injury and some wrongful cause" and should have investigated and discovered the factual basis for the claim. (*Fox*, *supra*, 35 Cal.4th at p. 803; see also *Jolly*, *supra*, 44 Cal.3d at p. 1109 & fn. 4 ["A plaintiff is held to her actual knowledge *as well as* knowledge that could reasonably be discovered through investigation of sources open to her." (Italics added.)]; *Doe v. Roman Catholic Bishop of Sacramento* (2010) 189 Cal.App.4th 1423, 1431 [" '[S]uspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period.' "].)

As noted above, there is an exception to the ordinary date of accrual under the discovery rule, which applies when the presumption that diligent investigation would have uncovered the basis for a claim is rebutted. Under this exception, the accrual date may be extended beyond the date on which the defendant has notice of injury or

---

[2] As YCS acknowledged at oral argument, it did not receive a confidential memorandum written in December 2015 by Bill Shoe, the County's principal planning and zoning administrator, until May 2018. Plainly, this memorandum did not lead to discovery of either YCS's injury or the factual basis for its negligent misrepresentation claim because YCS filed its notice of claim on March 15, 2018, two months *before* the Shoe memorandum was produced.

wrongdoing if "the plaintiff pleads and proves that a reasonable investigation at the time would not have revealed a factual basis for that particular cause of action." (*Fox*, *supra*, 35 Cal.4th at p. 803.) A plaintiff invoking this exception bears "the burden . . . to 'show diligence.' " (*Id*. at p. 808.) YCS has not satisfied this burden. It has not shown any " ' "uncontradicted and unimpeached" ' " evidence compelling the conclusion that YCS could not have discovered the factual basis for its negligent misrepresentation claim with a reasonably diligent investigation. (*Sonic Manufacturing*, *supra*, 196 Cal.App.4th at p. 466.) Indeed, YCS has not even asserted that it exercised due diligence in investigating its misrepresentation claim. As a consequence, YCS has failed to show that the exception to the ordinary rule of accrual upon inquiry notice applies.

Accordingly, we conclude that YCS's damages claim was untimely and the Government Code's immunity provisions bar it. Because YCS's damages claim was either time-barred or barred by governmental immunity, we need not reach YCS's arguments concerning the damages waiver in the settlement agreement, the trial court's findings concerning misrepresentation, or the exclusion of certain evidence.

### III. DISPOSITION

The judgment is affirmed. Respondent is entitled to recover reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

14

_____
BROMBERG, J.

WE CONCUR:

_____
GREENWOOD, P. J.

_____
DANNER, J.

*YCS Investments, Inc. v. County of Santa Clara*
H051381