Filed 7/28/25  State of California Office of the Controller v. Superior Court CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| STATE OF CALIFORNIA OFFICE OF THE CONTROLLER,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>GATEWAY BLVD HOLDINGS, LLC,<br><br>Real Party in Interest. | B338113<br>(Los Angeles County<br>Super. Ct. No. 22STCV21036) |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  David S. Cunningham III, Judge.  Petition granted.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Anya M. Binsacca and Jay C. Russell, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Kiesel Law, Paul R. Kiesel, Jeffrey A. Koncius, Cherisse Heidi A. Cleofe, Lisa M. Freeman; Ervin Cohen & Jessup, Michael C. Lieb, Geoffrey M. Gold and Elliot Chen for Real Party in Interest.

_____

Can the state controller be sued for conversion, injunctive relief, and refund of alleged fee overcharges by California county recorders? The answer is no. The Government Claims Act immunizes the controller from these claims and no statute or contract authorizes them. We therefore grant the controller's writ petition challenging the order overruling its demurrer to those claims and direct the trial court to vacate that order and enter a new order sustaining the demurrer without leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     The lawsuit

Real party in interest Gateway Blvd Holdings, LLC (Gateway), a real estate holding company, filed this action against the State Controller's Office (Controller) on June 28, 2022. In its operative second amended complaint, Gateway asserts class claims for refund, conversion, and injunctive relief for alleged fee overcharges by California county recorders under Government Code section 27388.1.[1] That statute, enacted into law in 2018 by Senate Bill No. 2, requires county recorders to collect a $75 fee (SB2 fee) "at the time of recording every real estate instrument, paper, or notice required or permitted by law to be recorded," subject to certain exemptions, "per each single transaction per parcel of real property." (§ 27388.1, subd. (a)(1).) The statute also requires county recorders to remit the SB2 fees they collect to the Controller on a quarterly basis. (§ 27388.1, subd. (b).)

Gateway alleges that the Los Angeles County Recorder,[2] "on behalf of the State of California and as the State's agent," improperly charged and collected from Gateway $150 in SB2 fees for recording a single document titled, "Substitution of Trustee and Full Reconveyance," wrongfully

_____

[1] All further statutory references are to the Government Code unless stated otherwise.

[2] The Los Angeles County Recorder is not a party to this action, nor is any other county recorder.

2

overcharging Gateway by $75. Gateway further alleges that the Controller violated section 27388.1 "[d]ue to their unlawful conduct and practice of doubling the SB2 [fee] for such documents . . . resulting in financial loss to [Gateway] and a Class of persons and entities similarly overcharged."

The Controller demurred, arguing among other things that section 815 of the Government Claims Act immunizes it from suit and that no statute authorizes Gateway's action. In opposition, Gateway argued that section 815 immunizes public entities only from liability for tort claims and "does not extend to actions sounding in contract or equity, such as claims for restitution."

The trial court overruled the Controller's demurrer in a written order dated April 23, 2024. The trial court, citing *County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034 (*Santa Clara*), ruled that section 815 immunity did not apply because the statute shields public entities from liability solely for money damages in tort cases and does not encompass liability based on contract or the right to obtain relief other than money damages. The trial court found that Gateway seeks restitution and injunctive relief, not money damages, and that "[d]ue to the restitutionary nature of the SAC's allegations, immunity applies to neither the refund count nor the conversion count."

## II. Writ petition

The Controller filed a petition for writ of mandate on May 29, 2024, challenging the trial court's order overruling the demurrer to the second amended complaint. We stayed the action pending resolution of the writ petition and issued an order to show cause why the relief requested in the petition should not be granted.

## DISCUSSION

## I. Propriety of writ review and general legal principles

"[W]rit review is appropriate only when (1) 'the remedy by appeal would be inadequate' [citation] or (2) the writ presents a 'significant issue of law' or an issue of 'widespread' or 'public interest.' " (*California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 929.) Writ review is appropriate here because the demurrer raises an important legal issue concerning the scope and application of the Government Claims

Act.  While the Controller arguably has a remedy on appeal, resolution of the issue now will avoid the burden and expense at the public fisc of class certification, class-wide discovery, and a class action trial.

We review the trial court's order under the ordinary standards of demurrer review " 'even though this case "arrived at the Court of Appeal by the unusual path of a writ petition challenging an order overruling a demurrer." ' " (*Doe 3, Family Services Organization v. Superior Court* (2025) 110 Cal.App.5th 571, 581.)  The de novo standard of review applies to an order overruling a demurrer.  Under that standard, the reviewing court accepts as true all facts properly pleaded in the complaint but does not accept as true the pleader's deductions, contentions, or conclusions of law.  (*Id.* at p. 582.)

## II.    Section 27388.1

### A.    *Statutory framework*

Gateway's claims are premised on the Controller's alleged violation of section 27388.1.  The Legislature enacted section 27388.1 to "establish permanent, ongoing sources of funding dedicated to affordable housing development." (Legis. Counsel's Dig., Sen. Bill No. 2, Stats. 2017, ch. 364, § 2(b)(17).)  Section 27388.1 subdivision (a)(1) requires county recorders to collect a $75 fee per transaction for a parcel of property at the time certain documents are recorded.  Subdivision (b) of the statute requires that a county recorder quarterly send revenues from this fee, after deduction of any actual and necessary administrative costs incurred by the county recorder, to the Controller for deposit in the Building Homes and Jobs Trust Fund, a fund created in the State Treasury.  (§ 27388.1, subds. (a)(1), (b).)  The Legislature appropriates money from this fund for use in affordable owner-occupied housing, use by local government agencies, or incentive programs administered by the California Department of Housing and Community Development.  (Health & Saf. Code, § 50470, subd. (b).)  The California Department of Housing and Community Development and the California Housing Finance Authority report annually to, among others, the Governor and the full Legislature on disbursements they have made from the Building Homes and Jobs Trust Fund.  (Health & Saf. Code, §§ 50471, 50408, 51005.)

4

## B. *No statutory basis for Gateway's claims*

Gateway cites no statutory basis for its claim that the Controller violated section 27388.1. Section 27388.1 does not impose a duty on the Controller to calculate, collect, disburse, or refund SB2 fees. The statute directs county recorders, not the Controller, to charge and collect SB2 fees. Section 27388.1 imposes no liability on the Controller for overcharges by county recorders.

Contrary to Gateway's claims, the Controller has no duty under section 12410 to audit county recorders' collection of SB2 fees. That statute mandates audits of claims against the state and allows audits of state disbursements.[3] Section 12410 neither mandates nor authorizes audits of county recorders' collection of recording fees.

Section 12410 cannot serve as a valid basis for an injunction requiring the Controller to "audit itself," as the trial court found, or to return any alleged overcharges. The Controller's duty to audit does not encompass the power to review, approve, or reject county recorders' calculation and collection of SB2 fees. *Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317 (*Tirapelle*) is instructive in this regard. The court in that case held the Controller could not refuse to implement a Department of Personnel Administration (DPA) decision to reduce state employee salaries. The court in *Tirapelle* noted that the Controller's duties under section 12410 were largely ministerial, whereas the Legislature had vested in the DPA jurisdiction and authority over state employee salaries. (*Tirapelle,* at pp. 1330, 1341.) Given that legislative directive, the court concluded that the Controller had no discretion as to issuance of the disputed warrants for state employee salaries: "[T]he Controller's duty to audit claims against the Treasury includes the duty to ensure that expenditures are authorized by law, but does not include the power to review and approve or reject decisions of a department vested by the Legislature with authority over expenditures. Where a department or agency acts within the authority delegated to it by

---

[3] Section 12410 states in relevant part: "The Controller shall superintend the fiscal concerns of the state. The Controller shall audit all claims against the state, and may audit the disbursement of any state money, for correctness, legality, and for sufficient provisions of law for payment."

5

the Legislature, the Controller must defer to the agency or department and leave review of the decision to the courts and/or the Legislature." (*Id.* at p. 1335, fn. omitted.) "[W]e have no doubt that if the Legislature chose to do so it could make the decisions of the DPA subject to the approval of the Controller, or it could invest the Controller with quasi-judicial powers of review, subject to final review in the courts. [Citations]. The Legislature has not chosen to do so." (*Id.*, fn. 23.) Here, as in *Tirapelle,* the Legislature has vested in county recorders jurisdiction and authority to calculate and collect SB2 fees. The Controller lacks authority and jurisdiction to alter county recorders' decisions in this regard.

*Tirapelle*, *supra*, 20 Cal.App.4th 1317, also forecloses Gateway's argument that section 12418 authorizes the Controller to direct county recorders' calculation and collection of SB2 fees. Section 12418 requires the Controller to "direct and superintend the collection of all money due the State," and to institute lawsuits for delinquencies in "assessment, collection, and payment" of revenue against persons who possess public money and fail to deliver it.[4] (§ 12418.) Nothing in that statute authorizes the Controller to review or direct county recorders' calculation and collection of SB2 fees. The Controller lacks the authority to do so. (See *Tirapelle*, *supra*, 20 Cal.App.4th at p. 1335.)

Gateway cites no valid statutory authority as the basis for its claims against the Controller. As we explain below, the absence of a statutory basis for liability is decisive on the question of whether Gateway's claims are barred under section 815 of the Government Claims Act.

## III.  Government Claims Act

Section 815, subdivision (a) "sets forth the general rule of immunity for public entities under the Government Claims Act." (*Santa Clara, supra,* 15 Cal.5th at p. 1045.) It states: "Except as otherwise provided by statute . . . a

---

[4] Section 12418 states in relevant part: "The Controller shall direct and superintend the collection of all money due the State, and institute suits in its name: [¶] (a) For all official delinquencies in relation to the assessment, collection, and payment of the revenue. [¶] (b) Against persons who by any means have become possessed of public money or property and fail to pay it over or deliver it. [¶] (c) Against all debtors of the State."

public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a).) An "injury" includes the "loss of property." (§ 810.8.)

Public entity immunity is circumscribed by section 814, which excludes immunity for claims based on contract or that seek relief other than money or damages: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." (§ 814.)

The California Supreme Court has explained that the legislative history underpinning the Government Claims Act shows that the scope of public entity immunity encompasses "common law *torts,* as opposed to different claims." (*Santa Clara, supra,* 14 Cal.5th at pp. 1046–1047.) The Supreme Court has concluded that the Government Claims Act is "intended to limit the state's 'exposure to liability for actual compensatory damages in tort cases.'" (*Id.* at p. 1047.)

In *Santa Clara, supra,* 14 Cal.5th 1034, the Supreme Court held that section 815 did not immunize the county operator of a health care plan from a quantum meruit claim by hospitals seeking reimbursement for emergency medical care provided to patients enrolled in the county's plan. In that case, providers of emergency medical care to patients enrolled in a county-operated health care plan sued the county for reimbursement under the Knox-Keene Act. The Knox-Keene Act requires health care plans to reimburse emergency medical care providers. The statute and its implementing regulations mandate reimbursement to providers who have not contracted with the health plan at a "reasonable and customary rate." (*Santa Clara,* at pp. 1042–1043.) The Supreme Court held that the Government Claims Act did not immunize the county from uncontracted providers' "quantum meruit claim to enforce a statutory duty of reimbursement" which was "premised on a theory of a promise implied in law [citation], and, more specifically, on a reimbursement duty imposed by statute." (*Id.* at pp. 1049, 1050.)

The Supreme Court stated that section 815 did not immunize the county against the hospitals' claims because "the Government Claims Act is concerned with shielding public entities from tort claims seeking money damages" and the hospitals' quantum meruit claim did not seek "money

7

damages." (*Santa Clara, supra,* 14 Cal.5th at p. 1049.) Rather, the hospitals sought "to compel the County to comply with its mandatory duty under the Knox-Keene Act and its implementing regulations to reimburse the [plaintiffs] for the reasonable and customary value of their emergency services and care." (*Id.* at p. 1051.)

The Supreme Court in *Santa Clara* cited its previous decision in *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859 (*City of Dinuba*), which held that section 860.2[5] of the Government Claims Act did not immunize the county from an action to recover misallocated tax revenue the county was statutorily required to allocate and distribute. (*City of Dinuba,* at pp. 865–868.) The court in *City of Dinuba* gave two reasons for its holding: (1) Section 860.2 limits governmental liability for an "injury," defined in section 810.8 as "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, character, feelings or estate" and the county's failure to comply with its statutory duty to allocate and distribute tax revenue did not come within this definition; and (2) The Government Claims Act is "concerned with shielding public entities from having to pay money damages for torts" and the plaintiffs did not seek damages, but to compel the county to perform an express statutory duty. (*City of Dinuba,* at p. 867.)

The Supreme Court in *Santa Clara* viewed the claims asserted in *City of Dinuba* and the hospitals' quantum meruit claim as statutorily based: "Although some differences exist between the claims in *City of Dinuba* and this matter, the nature of the right sued upon—the statutory right to receive funds—is analogous." (*Santa Clara, supra,* 14 Cal.5th at p. 1051, fn. omitted.)

The Supreme Court in *Santa Clara* also cited a decision by this court, *Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950 (*Utility Audit*), which held that the Government Claims Act did not immunize the city from an action seeking interest on sewer fee refunds that were

---

[5] Section 860.2 states: "Neither a public entity nor a public employee is liable for an injury caused by: [¶] . . . [¶] (b) An act or omission in the interpretation or application of any law relating to a tax."

mandated by statute. (*Utility Audit,* at pp. 953–954, citing Gov. Code, § 53082, subd. (a).)[6] In rejecting the city's argument for immunity, this court reasoned that the utility's "claim for refund of overcharges, without more, appears to be based upon breach of a contractual duty." (*Utility Audit,* at p. 958.) That claim was also based on an express statutory duty to "refund any sewer service fees collected for which no services were delivered" (Gov. Code, § 53082, subd. (a)), as well as Civil Code section 3287, under which interest is recoverable for damages capable of being ascertained on a date certain. (*Utility Audit,* at pp. 958–959.)

Santa Clara, *City of Dinuba,* and *Utility Audit* are all distinguishable. Each of those cases involved an express statutory duty by the public entity to reimburse or refund monies owed to the defendants. Unlike the public entity defendants in those cases, the Controller has no statutory duty to collect or refund SB2 fees. Absent such a duty, there is no statutory, contractual, or quasi-contractual basis for restitution, refund, constructive trust, or any other remedy sought by Gateway in this case.

## IV. Gateway's claims are barred by section 815

Gateway's claims are barred by section 815 because Gateway fails to plead with particularity any right to relief that is not premised on common law tort liability for money or damages. Gateway's purported claims for refund (first cause of action) and injunctive relief (third cause of action) do not overcome immunity because restitution and injunctive relief are remedies, not causes of action. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 734 [injunctive relief is a remedy, not a cause of action]; *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 661 ["There is no freestanding cause of action for 'restitution' in California"].)

Gateway's sole cognizable claim for recovery is conversion, a common law tort. (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150.) The tort consists of

---

[6] Government Code section 53082 requires local agencies to "refund any sewer service fees collected for which no services were delivered." (Gov. Code, § 53082, subd. (a).) The plaintiff's claim for interest was based on Civil Code section 3287, subdivision (a), which authorizes recovery of interest against anyone, including a public entity, for damages capable of being ascertained on a date certain. (Civ. Code, § 3287, subd. (a).)

three elements: " '(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.' " (*Ibid.*) "A successful plaintiff in a conversion action is entitled to recover '[t]he value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of . . .' plus 'fair compensation for time and money properly expended in pursuit of the property.' " (*Id.* at pp. 1150–1151.)

Gateway concedes that conversion is a tort but argues that the claim is not barred by section 815 because the relief it seeks are equitable remedies of restitution or constructive trust, and not money or damages. This argument fails because the property allegedly wrongfully converted here is money—the $75 alleged overcharge. The remedy Gateway seeks is recovery of that money. Section 815 accordingly bars the conversion claim.

*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730 (*Stockton*) informs our assessment of Gateway's restitution argument. The plaintiff in that case argued that its breach of contract action against the City of Stockton, which sought only restitution as a remedy, was exempt from the Government Claims Act requirement that "all claims for money or damages" against a public entity be presented before filing suit. The plaintiff cited *Minsky v. L.A.* (1974) 11 Cal.3d 113 and *Holt v. Kelly* (1978) 20 Cal.3d 560, which held that a claim for recovery of specific personal property, when seized and held by the government as a "bailee" for the claimant, is not one for "money or damages" subject to the claim presentation requirement. (*Minsky,* at p. 121; *Holt,* at pp. 564–565.) The plaintiff in *Stockton* argued that it had transferred construction plans to the city in the expectation that it would be compensated for them, bringing its claim within *Minsky* and *Holt.* The Supreme Court rejected that argument, noting that "[s]ubsequent cases have limited the *Minsky* exception to situations in which the defendant had a duty to return seized property, enforceable by way of mandamus." (*Stockton, supra,* 42 Cal.4th at p. 743.) The Supreme Court stated: "When a claim for 'money or damages' is not based on a governmental obligation to return specific property, it is subject to the claim requirements." (*Ibid.*) The court in

10

*Stockton* further stated that the plaintiff "identifies no specific property held by defendants that it was entitled to recover. Rather, it contends it yielded assets in exchange for a promise of compensation. An attempt to enforce such a contractual agreement is a claim for 'damages.' " (*Ibid*., fns. omitted.)

While *Stockton* concerned the claim presentation requirement and not immunity under the Government Claims Act, the court's reasoning is instructive here. Gateway's tort claim for conversion seeks "money or damages" and not a claim for the recovery of specific personal property based on a governmental obligation to return that specific property. It is therefore barred by section 815. To hold otherwise would fail to give effect to the term "money" used in the disjunctive in section 814, which states that "[n]othing in this part affects . . . the right to obtain relief other than *money or* damages against a public entity." (§ 814, italics added.) "It is an elementary rule of statutory construction that, if possible, every word and phrase of a statute should be given significance in order to effect the legislative intent." (*Steinberg v. Amplica, Inc.* (1986) 42 Cal.3d 1198, 1205; see also *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 960 [under the canon of statutory construction known as *noscitur a sociis,* " 'the meaning of a word may be ascertained by reference to the meaning of other terms which the Legislature has associated with it in the statute, and . . . its scope may be enlarged or restricted to accord with those terms' "].)

Contrary to the trial court's finding, immunity cannot be defeated by treating Gateway's refund claim as a common count. "A common count is not a specific cause of action . . . rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory. [Citations.] When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394–395.) The principle concerning demurrability applies here. Gateway's claim for refund is premised on the same facts as its conversion claim and seeks the same recovery as the conversion claim—"restitution" of the $75 alleged overcharge in violation of section 27388.1. The refund claim

11

treated as a common count is thus demurrable under section 815 for the same reasons the conversion claim is demurrable.  (*McBride,* at pp. 394–395.)

## DISPOSITION

The petition for writ of mandate is granted and the requested writ hereby issues.  The respondent court is directed to vacate its April 23, 2024 order overruling the Controller's demurrer to the second amended complaint and to enter a new and different order granting the Controller's demurrer without leave to amend.  The Controller is to recover its costs in this proceeding.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


RICHARDSON, J.

12